IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

```
_____
                              )
DENNIS K. MORRIS,             )
                              )
                Plaintiff,    )
                              )
      vs.                     )   Civ. No. 13-00182 ACK-KSC
                              )
JOHN MCHUGH, SECRETARY        )
DEPARTMENT OF U.S. ARMY,      )
                              )
                Defendant.    )
_____
```

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

### PROCEDURAL BACKGROUND

On April 23, 2013, Plaintiff Dennis Morris ("Plaintiff" or "Morris") filed a First Amended Complaint and Summons ("FAC"). ECF No. 4.  In the FAC, Morris alleges Defendant John McHugh ("Defendant" or "Army") in his official capacity as United States Secretary of the Army discriminated against Morris on the basis of his age. FAC at 1, ¶ 1.  Specifically, Plaintiff brings the following claims against Defendant: (1) violation of the Age Discrimination in Employment Act ("ADEA") and (2) violation of Plaintiff's due process rights under the 5th and 14th Amendments to the United States Constitution and under 5 U.S.C. § 7701(c)(2)(A). FAC at 24, ¶¶ 70-74.

Defendant filed the instant Motion to Dismiss or in the Alternative for Summary Judgment and Motion to Strike Jury Demand ("Motion" or "Def.'s Mot.") along with a Concise Statement of Facts ("Def.'s CSF") on August 9, 2013. ECF Nos. 10-11.  On August 13th, 2013, Defendant filed an Errata to correct the caption to the Motion and remove the portion titled "Motion to Strike Jury Demand." ECF No. 13.  The caption was erroneous because Plaintiff's FAC does not contain a jury demand and Defendant's Motion does not contain an argument to strike a jury demand. Id. at 2.  On August 21, 2013, Defendant's Motion was set for hearing on November 4, 2013. ECF No. 16.  After two joint requests for continuances, the hearing was eventually moved to January 23, 2014. ECF Nos. 17, 19 & 23.  On December 27, 2013, Plaintiff filed his Opposition to Defendant's Motion ("Pl.'s Opp.") along with a Concise Statement of Facts ("Pl.'s CSF"). ECF Nos. 25-26.  Defendant filed a reply ("Def.'s Reply) on January 9, 2014. ECF No. 31.  This Court held a hearing regarding Defendant's Motion on January 23, 2014.

## FACTUAL BACKGROUND[1]

### A.   Morris's Employment at Fort Shafter

Plaintiff was born on March 17, 1942, and is

---

[1]The facts as recited in this Order are for the purpose of disposing of the current motion and are not to be construed as findings of fact that the parties may rely on in future proceedings.

seventy-one years old. FAC at 2, ¶ 4.  After retiring from the U.S. Army as a Lieutenant Colonel ("LTC") following 24 years of service, Plaintiff worked as a Supervisory Operations Officer with the Army at the Fort Shafter Police Station in Hawaii. Id. at 3, ¶ 6.  Plaintiff served as an Operations Officer for over 16 years, from September 1991 to April 2008. Id.  Plaintiff received excellent evaluations for his work and received a Commander's Award for civilian service. Id. ¶ 27.

As a Supervisory Operations Officer, Plaintiff was required under the National Security Personnel System ("NSPS") to rate subordinates and submit the ratings to a Pay Pool Panel ("Panel") for review. Def.'s CSF at 2, ¶ 3; Pl.'s CSF at 2, ¶ 3. In October and November 2007, Plaintiff completed annual performance appraisals for three subordinates under the NSPS. FAC at 4, ¶ 8.  Plaintiff was required to rate the subordinates using a five-point scale with five being the highest rating and three considered an average rating. Id. ¶ 9.  Plaintiff gave all three subordinates an overall rating of four. Id.

On November 9, 2007, the Panel evaluated Plaintiff's annual appraisal ratings for the three employees and determined that the ratings were unsubstantiated. Def.'s CSF Ex. 2 at 1.  On November 13, 2007, Roy Brown, Acting Deputy Director of Emergency Services and Plaintiff's immediate supervisor, told Plaintiff that the Panel members wanted additional justification for the

ratings or for Plaintiff to change the ratings to those
recommended by the Panel. Id.  When the Panel reconvened on
November 15, 2007, no changes had been made to the ratings. Id.
Brown spoke again with Plaintiff to discuss why the changes to
the appraisal ratings had not been made. Id.  After Plaintiff
told Brown he was "firm in [his] decision and would not be making
any changes," Brown explained to Plaintiff that under the United
State Army Installation Management Command's ("IMCOM") NSPS
Business Rules the rater was required to make the changes. Id.[2]
Plaintiff reiterated that he would not make the changes and told
Brown that he "wanted to see everything in writing so [he] could
seek legal counsel prior to making a final decision." Id.

On November 16, 2007, LTC Michael Wallace, Director of
Emergency Services and Plaintiff's second-level supervisor, spoke
with Plaintiff and provided him with a copy of IMCOM's Pay Pool
Business Rules. Id.  After Brown directed Plaintiff to make the
changes, Plaintiff told Brown and LTC Wallace that he "could not
in good conscience make any changes to their appraisals." FAC at
7, ¶ 14.  Plaintiff then explained to Brown and LTC Wallace that
the Panel members had the authority to make the changes

---

[2]The Army claims NSPS Rules mandate that the rater make
changes to the appraisal ratings or be subject to disciplinary
action, including transfer to a non-supervisory position.
However, the Court notes that Defendant has not submitted an
exhibit listing the relevant portion of the IMCOM's NSPS Business
Rules.

themselves. <u>Id.</u>  Brown and LTC Wallace again explained to
Plaintiff that he had to comply with the Panel's orders. <u>Id.</u> ¶
15.  Plaintiff stated that he was "still thinking about it," but
ultimately did not make any of the requested changes. Def.'s CSF
Ex. 2 at 2.  By November 21, 2007, no changes had been made to
the appraisals. <u>Id.</u>  Brown made the required changes to the
appraisals and returned them to the Panel's administrator. <u>Id.</u>

Because Plaintiff did not comply with the Panel's
directives about changing the performance appraisals, LTC Wallace
relieved Plaintiff of his job and reassigned him to a non-
supervisory position at Wheeler Army Airfield. FAC at 8, ¶ 18;
Def.'s CSF at 3, ¶ 9.  On December 13, 2007, LTC Wallace
delivered a memorandum titled "Subject: Notice of Directed
Reassignment--Dennis Morris." FAC at 8, ¶ 18.  Lieutenant Colonel
Wallace told Plaintiff he was relieving him of his job as
Supervisory Operations Officer and directed him to report to the
non-supervisory job at Wheeler beginning on January 6, 2008.  FAC
at 8, ¶ 18; Def.'s CSF at 3, ¶ 10.  Lieutenant Colonel Wallace
explained his decision to reassign Plaintiff in the memorandum:

> Your demonstrated inability to follow supervisory
> standards negatively affected this entire organization.
> You deliberately refused to abide by written standards
> and repeated requests from your Chain of Command.  You
> allowed your personal obstinacy to override your
> professional responsibilities causing irreparable
> damage to my trust in you as a supervisor.

Def.'s CSF Ex. 2 at 2, ¶ 2.

A week later, Plaintiff met with Colonel ("COL") Matthew Margotta, Commander of the U.S. Army Garrison-Hawaii and Bryson Jhung, Deputy to COL Margotta, to object to his reassignment. FAC at 9, ¶ 21.  On January 2, 2008, after reviewing the proposal, COL Margotta gave Plaintiff a written decision stating that Plaintiff would be reassigned. FAC at 10, ¶ 23; Def.'s CSF at 4, ¶ 11.

On January 7, 2008, Plaintiff sent a memorandum to Debra Zedalis, Director of the U.S. Army Installation Management Command Pacific Region. FAC at 12, ¶ 26; Def.'s CSF at 4, ¶ 12. In the memorandum, Plaintiff indicated that he was being treated unfairly and wrote the following:

> As a compromise offer to my being removed from my job, I will submit a formal written intent to retire to the civilian personnel office with a retirement date of April 30, 2008.  I respectfully request that you allow me to remain as the Operations Officer of the Fort Shafter Military Police Station so I can retire with dignity from the job I have performed faithfully for the last 16 years.

FAC at 12, ¶ 27; Def.'s CSF at 4, ¶ 12.

Subsequently, the Army Command drafted a settlement agreement that Plaintiff signed on February 1, 2008. FAC at 12-13, ¶¶ 29-30; Def.'s CSF at 4, ¶ 12-13.  Pursuant to the settlement agreement, Morris agreed to "resign" on April 26, 2008, in exchange for the "Agency agree[ing] to cancel the directed reassignment, and allow[ing] Morris to remain in his

supervisory Operations Officer position until April 26, 2008."
FAC at 13, ¶ 31; Def.'s CSF at 4-5, ¶¶ 14-15.

On March 14, 2008, Plaintiff submitted a memorandum to
COL Margotta requesting that COL Margotta rescind the settlement
agreement and allow him to remain in his position as Supervisory
Operations Officer without retiring. Def.'s CSF at 5, ¶ 15 & Ex.
6.  On April 5, 2008, COL Margotta emailed Morris and stated that
he would adhere to the settlement agreement accepting Plaintiff's
retirement effective April 26, 2008. FAC at 15, ¶¶ 40-41; Def.'s
CSF at 5, ¶ 16.  On April 26, 2008, the personnel office sent
Plaintiff a "Notification of Personnel Action" indicating the
nature of the action as "resignation." FAC at 20, ¶ 54; Def.'s
CSF at 6, ¶ 17 & Ex. 16.

### B.   Morris Requests Reassignment

Between the 5th and 8th of April 2008, Plaintiff sent
letters complaining of age discrimination and unfair treatment to
various elected officials and Army personnel. FAC at 42, ¶ 42.
When COL Margotta learned that Plaintiff wrote to several U.S.
Congressmen, he called Plaintiff into his office and indicated
that he was upset about Plaintiff's letters. Id. at 16-17, ¶ 43.

A few weeks after meeting with COL Margotta, Plaintiff
met with COL Howard Killian, Deputy Director of the U.S. Army
Installation Management Command of the Pacific Region. Id. at 18,
¶ 46.  Colonel Killian stated that Debra Zedalis, COL Killian's

-7-

immediate supervisor, indicated to him that she did not believe an employee should lose his job for doing what Plaintiff had done. Id.  Colonel Killian also told Plaintiff that he may be willing to allow Plaintiff to work in the Command but not in a supervisory position. Id.

Based on this conversation, Plaintiff called COL Margotta and asked him if he had a job for Plaintiff because he did not want to resign or be removed from employment with the Army. Id. at 19, ¶ 47.  Colonel Margotta directed Plaintiff to contact LTC Thomas Denzler, Director of Emergency Services for the U.S. Army Garrison--Hawaii. Id. at 19, ¶ 48.  On May 1, 2008, Plaintiff met with LTC Denzler who stated there was a GS-11 job available. Id. at 19, ¶¶ 49-50.  Plaintiff told LTC Denzler that he wanted the GS-11 job. Id.  On May 2, 2008, Joseph Rozmiarek, Director of Civilian Personnel, sent an email to LTC Denzler advising him to send in a "Request for Personnel" action that requested Plaintiff be named for the job. Id. at 20, ¶ 52.  Rozmiarek stated that the Civilian Personnel Advisory Center ("CPAC") would make the job offer to Plaintiff. Id.  However, Plaintiff was neither contacted by the CPAC nor offered the job. Id. at 20, ¶ 53.

### C.   Administrative Proceedings

On April 11, 2008, Plaintiff initiated an informal Equal Employment Opportunity ("EEO") complaint alleging

discrimination on the basis of his age. Def.'s CSF at 6, ¶ 18; Pl.'s CSF at 3, ¶ 18.  On May 16, 2008, Plaintiff filed a formal EEO complaint asserting age discrimination. Def.'s CSF at 6, ¶ 19 & Ex. 8; Pl.'s CSF at 3, ¶ 19.  On June 15, 2008, Plaintiff filed a mixed case appeal with the Merit Systems Protection Board ("MSPB" or "Board") that was eventually dismissed without prejudice as premature. Def.'s CSF at 7, ¶ 20 & Ex. 10; Pl.'s CSF at 3, ¶ 20.  On February 25, 2009, the Equal Employment Opportunity Commission ("EEOC") and Plaintiff agreed to dismiss the formal EEO complaint without prejudice and allow Plaintiff to re-file a mixed case appeal with the MSPB. Def.'s CSF at 7, ¶ 21 & Ex. 11; Pl.'s CSF at 3, ¶ 21. Plaintiff re-filed his mixed case appeal with the MSPB, but the MSPB dismissed his appeal because the agency lacked jurisdiction. Def.'s CSF at 7, ¶ 22 & Ex. 12; Pl.'s CSF at 3, ¶ 22.  Specifically, the Board ruled that Plaintiff had "not alleged facts which, if proven, would show that his resignation was involuntary." FAC at 22, ¶ 64; Def.'s CSF at 7, ¶ 22 & Ex. 12.

Next, Plaintiff attempted to re-file his EEO complaint as a non-mixed case. Def.'s CSF at 7, ¶ 23 & Ex. 13; Pl.'s CSF at 4, ¶ 23.  On September 21, 2012, the EEOC issued an order requiring the Army to treat the EEO complaint as a "mixed case complaint" and issue a Final Agency Decision ("FAD"). Id.  On November 8, 2012, the Army issued a FAD on Plaintiff's mixed case

complaint finding that Plaintiff was not discriminated on the basis of his age and advising him that any administrative appeal lay with the MSPB.  Def.'s CSF at 7-8, ¶ 24 & Ex. 14; Pl.'s CSF at 4, ¶ 24.  Plaintiff then appealed the FAD to the MSPB, which dismissed for lack of jurisdiction. Def.'s CSF at 8, ¶ 25 & Ex. 15; Pl.'s CSF at 4, ¶ 25.  Plaintiff filed the instant suit within 30 days of the initial MSPB decision becoming final. Id.

**STANDARD**

**A. Subject Matter Jurisdiction**

A defendant may move to dismiss an action for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1).  A motion to dismiss for lack of subject matter jurisdiction will be granted if the complaint on its face fails to allege facts sufficient to establish subject matter jurisdiction. See Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039 n. 2 (9th Cir. 2003).  In considering a Rule 12(b)(1) motion, the Court "is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." McCarthy v. United States, 850 F.2d 558, 560 (9th Cir. 1988).

**B. Failure to State a Claim**

Federal Rule of Civil Procedure 12(b)(6) authorizes the Court to dismiss a complaint that fails "to state a claim upon

which relief can be granted."  The Court may dismiss a complaint either because it lacks a cognizable legal theory or because it lacks sufficient factual allegations to support a cognizable legal theory. <u>Conservation Force v. Salazar</u>, 646 F.3d 1240, 1242 (9th Cir. 2011).  For a Rule 12(b)(6) motion to dismiss, the Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the nonmoving party. <u>Sateriale v. R.J. Reynolds Tobacco Co.</u>, 697 F.3d 777, 783 (9th Cir. 2012) (citation omitted).  The complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009).

In this case, Defendant has filed a motion to dismiss, or in the alternative, for summary judgment.  Under Rule 12(d), "[i]f on a motion under Rule 12(b)(6). . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary under Rule 56."  The parties must have "a reasonable opportunity to present all material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Here, Defendant filed the instant Motion with a Concise Statement of Facts, which includes numerous exhibits. <u>See</u> ECF Nos. 10-11.  Plaintiff filed its Opposition to Defendant's Motion with a Concise Statement of Facts, which included numerous exhibits to rebut Defendant's Concise Statement of Facts. <u>See</u> ECF

Nos. 25-26.   Because the parties have presented outside material in support of or in opposition to Plaintiff's ADEA claim and the Court is relying on those materials, the Court treats Defendant's Motion as to Plaintiff's ADEA claim "as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d); <u>Anderson v. Angelone</u>, 86 F.3d 932, 934 (9th Cir. 1996) ("A motion to dismiss made under the Federal Rule of Civil Procedure 12(b)(6) must be treated as a motion for summary judgment under Federal Rule of Civil Procedure 56 if either party to the motion to dismiss submits materials outside the pleadings in support or opposition to the motion, and if the district court relies on those materials.")

However, the Court does not treat Defendant's Motion as to Plaintiff's due process claims as one for summary judgment. "A court may. . . consider certain materials--documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice--without converting the motion to dismiss into a motion for summary judgment." <u>U.S. v. Ritchie</u>, 342 F.3d 903, 908 (9th Cir. 2003).   With respect to Plaintiff's due process claims, the Court only relies on three exhibits in Defendant's Concise Statement of Facts, Exhibits 10, 12 and 15.   All three of the exhibits are written decisions by the MSPB. <u>See</u> Def.'s CSF Exs. 10, 12 & 15.   Plaintiff refers extensively to the MSPB decisions in his FAC. <u>See</u> FAC at 21-24, ¶¶ 57, 61-65 & 68-69.   The MSPB decisions are also public records

and neither party questions their authenticity.  Because the MSPB decisions are incorporated by reference in the FAC and matters of judicial notice, the Court is not required to convert Defendant's Motion with respect to Plaintiff's due process claims into a motion for summary judgment under Rule 56. See FAC at 22-24, ¶¶ 61-65, 68-69.

**C. Summary Judgment**

A party may move for summary judgment on any claim or defense--or part of a claim or defense--under Federal Rule of Civil Procedure 56.  Summary judgment "should be granted 'if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" Maxwell v. Cnty. of San Diego, 697 F.3d 941, 947 (9th Cir. 2012) (quoting Fed. R. Civ. P. 56(a)).  Under Rule 56, a "party asserting that a fact cannot be or is genuinely disputed must support the assertion," either by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

The substantive law determines which facts are material; "only disputes over facts that might affect the outcome of the suit under the governing law properly preclude the entry of summary judgment." Nat'l Ass'n of Optometrists & Opticians v.

Harris, 682 F.3d 1144, 1147 (9th Cir. 2012).  "The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." Scott v. Harris, 550 U.S. 372, 380 (2007) (emphasis in original).

A genuine issue of material fact exists if "a reasonable jury could return a verdict for the nonmoving party." United States v. Arango, 670 F.3d 988, 992 (9th Cir. 2012) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986)).  Conversely, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." Scott, 550 U.S. at 380.

The moving party has the burden of persuading the court as to the absence of a genuine issue of material fact. Avalos v. Baca, 596 F.3d 583, 587 (9th Cir. 2010).[3/]  If the moving party satisfies its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the

---

[3/]When the party moving for summary judgment would bear the burden of proof at trial, the movant must present evidence which would entitle it to a directed verdict if the evidence were to go uncontroverted at trial. Miller v. Glenn Miller Prods., 454 F.3d 975, 987 (9th Cir. 2006) (citation omitted).  In contrast, when the nonmoving party would bear the burden of proof at trial, the party moving for summary judgment may meet its burden by pointing out the absence of evidence from the nonmoving party. Id. (citation omitted).

material facts." <u>Sluimer v. Verity, Inc.</u>, 606 F.3d 584, 587 (9th Cir. 2010).  The nonmoving party must present evidence of a "genuine issue for trial," Fed. R. Civ. P. 56(e), that is "significantly probative or more than merely colorable." <u>LVRC Holdings LLC v. Brekka</u>, 581 F.3d 1127, 1137 (9th Cir. 2009). Summary judgment will be granted against a party who fails to demonstrate facts sufficient to establish "an element essential to that party's case and on which that party will bear the burden of proof at trial." <u>Parth v. Pomona Valley Hosp. Med. Ctr.</u>, 630 F.3d 794, 798-99 (9th Cir. 2010).

When evaluating a motion for summary judgment, the court must "view the facts and draw reasonable inferences in the light most favorable to the party opposing the summary judgment motion." <u>Scott v. Harris</u>, 550 U.S. 372, 378 (2007).  The court may not, however, weigh conflicting evidence or assess credibility. <u>In re Barboza</u>, 545 F.3d 702, 707 (9th Cir. 2008).[4] Accordingly, if "reasonable minds could differ as to the import

---

[4]Nonetheless, a "conclusory, self-serving affidavit" that lacks detailed facts and supporting evidence may not create a genuine issue of material fact. <u>F.T.C. v. Neovi, Inc.</u>, 604 F.3d 1150, 1159 (9th Cir. 2010).  Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." <u>Scott</u>, 550 U.S. at 380. "The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." <u>Yeager v. Bowlin</u>, 693 F.3d 1076, 1080 (9th Cir. 2012).

of the evidence," summary judgment will be denied. <u>Anderson</u>, 477

U.S. at 250-51.

**DISCUSSION**

**I. Plaintiff's Due Process Claims Under the 5th and 14th**

**Amendments to the U.S. Constitution and 5 U.S.C. § 7703**

Defendant argues that Plaintiff's constitutional claims

should be dismissed for lack of subject matter jurisdiction or,

in the alternative, for failure to state a claim upon which

relief can be granted. Def.'s Mot. at 2.  Specifically, Defendant

contends that Plaintiff cannot bring a <u>Bivens</u> claim against a

government official in his official capacity and, moreover, such

a claim is preempted by the ADEA. <u>Id.</u> at 2.  Plaintiff argues

that the Court has jurisdiction pursuant to 5 U.S.C. § 7703

because he is appealing a decision of the MSPB. Pl.'s Opp. at 6-

8.

**A.  Jurisdiction Under 5 U.S.C. § 7703**

The Civil Service Reform Act of 1978 ("CSRA"), 5 U.S.C.

§ 1101 <u>et seq.</u>, creates "a framework for evaluating personnel

actions against federal employees." <u>Kloeckner v. Solis</u>, 133 S.

Ct. 596, 600 (2012).  The CSRA's "statutory framework provides

graduated procedural protections depending on an action's

severity." <u>Id.</u>  If the action involves removal, a suspension for

more than 14 days, a reduction in grade, a reduction in pay, or a

furlough, the affected employee has a right to appeal the

-16-

employing agency's decision to the MSPB. Id.; see 5 U.S.C. §§ 1204, 7512 & 7701.  When an employee complains of a personnel action appealable to the MSPB and alleges that the action was based on discrimination, the employee is said to have brought a "mixed case." Kloeckner, 133 S. Ct. at 601; see C.F.R. § 1614.302 (2012).  The CSRA along with MSPB and EEOC regulations set out special procedures to govern mixed cases. Kloeckner, 133 S. Ct. at 601.

"A federal employee bringing a mixed case may proceed in a variety of ways." Id.  The employee may first file a discrimination complaint with the agency itself. Id.; see 5 C.F.R. § 1201.154 & 29 C.F.R. § 1614.302(b).  If the agency rules against the employee, the employee may either take the matter to the MSPB or bypass further administrative review and file suit in district court. Kloeckner, 133 S. Ct. at 601; see 5 CFR § 1614.302 (2012).

Alternatively, the employee may first bring his case directly to the MSPB and forgo the agency's own system for evaluating age discrimination charges. Kloeckner, 133 S. Ct. at 601; see 5 C.F.R. § 1201.154(a) & 29 C.F.R. § 1614.302(b).  If the Board upholds the employer's personnel action, the employee can either request additional administrative process with the EEOC or seek judicial review. Kloeckner, 133 S. Ct. at 601; see 5 U.S.C. §§ 7702(a)(3),(b).

-17-

"Section 7703 of the CSRA governs judicial review of the MSPB's decisions." Kloeckner, 133 S. Ct. at 601.  Section 7703(b)(1) provides the basic rule: "Except as provided in paragraph (2) of this subsection, a petition to review a. . . final decision of the Board shall be filed in the United States Court of Appeals for the Federal Circuit."  Section 7703(b)(2) articulates the exception: "Cases of discrimination subject to the provisions of section 7702 of this title shall be filed under [the enforcement sections of the Civil Rights Act, Age Discrimination in Employment Act, and Fair Labor Standards Act], as applicable."  The enforcement provisions of every antidiscrimination statutes listed in § 7703(b)(2) authorizes suit in federal district court. Kloeckner, 133 S. Ct. at 601.

Section 7702(a)(1) clarifies the meaning of the phrase "cases of discrimination" referenced in § 7703(b)(2)'s exception:

> [I]n the case of any employee or
> applicant for employment who-
> (A) has been affected by an action which
> the employee or applicant may appeal to
> the Merit Systems Protection Board, and
> (B) alleges that a basis for the action
> was discrimination prohibited by
> [specified antidiscrimination statutes
> including the ADEA], the Board shall,
> within 120 days of filing of the appeal,
> decide both the issue of discrimination
> and the appealable action in accordance
> with the Board's appellate procedures.

The "case of discrimination" referenced in § 7703(b)(2)'s exception are mixed cases, or cases that are appealable to the

MSPB and allege discrimination. Kloeckner, 133 S. Ct. at 602.
Accordingly, in a mixed case, jurisdiction generally lies with
the federal district court. Id.

In Kloeckner, the Supreme Court held that a federal
employee who claims that an agency action appealable to the MSPB
violates a federal antidiscrimination statute listed in the CSRA
should seek judicial review in district court, not in the Federal
Circuit, when the MSPB decided the case on procedural grounds or
on the merits. 133 S. Ct. at 607.  The Kloeckner Court, however,
did not explicitly address whether jurisdictional dismissals by
the MSPB should go to the Federal Circuit or to a district court.
Conforto v. Merit Systems Protection Bd., 713 F.3d 1111, 1117
(Fed. Cir. 2013).  The Ninth Circuit has not yet addressed
whether Kloeckner mandates that mixed cases dismissed by the MSPB
solely on jurisdictional grounds should still go to a federal
district court.

In Conforto, however, the Federal Circuit held that the
"statutory text, the Court's rationale in Kloeckner, our own
prior decisions, and the decisions of other courts all indicate
that an appeal from the Board's dismissal for lack of
jurisdiction belongs in this Court." 713 F.3d at 1117.  The
Federal Circuit reasoned that because an employee may appeal to
the MSPB "only if the employee's claim is within the Board's
appellate jurisdiction, the plain import of this statutory

language is that a purported mixed case appeal is reviewed by the district court only if the Board has jurisdiction to decide the appeal from the adverse action in issue." Id. at 1118.  The Federal Circuit further concluded that because the employee's claim in Kloeckner was barred under a procedural rule, the Supreme Court "reversed only the line of authority holding that 'mixed cases' dismissed by the Board on procedural grounds were appealable to this court." Id.  Indeed, the Supreme Court granted certiorari "to resolve a Circuit split on whether an employee seeking judicial review should proceed in the Federal Circuit or in a district court when the MSPB has dismissed her mixed case on procedural grounds." Id. (citing Kloeckner, 133 S. Ct. at 603). Accordingly, the Federal Circuit concluded that it had "jurisdiction to review a determination by the Board that it lacks statutory jurisdiction over an employee's appeal." Id. at 1116.

The Federal Circuit's holding comports with the line of pre-Kloeckner Ninth Circuit cases finding that an appeal from a MSPB dismissal of a mixed case for lack of jurisdiction belongs in the Federal Circuit. See, e.g., Sloan v. West, 140 F.3d 1255, 1262 ("Given the plain language of the statute, we join our sister circuits and hold that appeals of MSPB jurisdictional decisions involving mixed claims are properly venued in the Federal Circuit Court of Appeals.").

Here, the MSPB dismissed Plaintiff's final mixed case appeal on jurisdictional grounds. See Def.'s CSF Ex. 15.[5/]   In his final appeal, Plaintiff argued that his "resignation" from the position of Supervisory Operations Officer was involuntary and added a claim for whistleblowing. Id. at 4.   The Board applied the doctrine of collateral estoppel, or issue preclusion, and found that Plaintiff was precluded from relitigating the Board's prior decision. See Def.'s CSF Ex. 15 at 7.   In the Board's prior decision, the Administrative Law Judge ("ALJ") found that Plaintiff failed to show that his "resignation" was involuntary and, therefore, was not an appealable action. See Def.'s CSF Ex. 12 at 14.   Accordingly, the ALJ dismissed Plaintiff's mixed case appeal because the Board lacked jurisdiction. Id.[6/]

---

[5/]The Court notes that Plaintiff's first mixed case appeal with the MSPB was dismissed without prejudice as premature. Def.'s CSF at 7, ¶ 20 & Ex. 10.   Specifically, the MSPB found that because Plaintiff filed a formal EEO complaint with the Army prior to filing with the Board, the Board's jurisdiction was delayed until either the agency issued a FAD or 120 days elapsed from the filing of the complaint.   Def.'s CSF Ex. 10 at 2. Although the MSPB's first dismissal was arguably on procedural grounds, Plaintiff's due process claims are predicated on the "final MSPB decision [which] was dated March 21, 2013." Pl.'s Opp. at 7.   Moreover, Plaintiff declined to file a petition for review and did not seek judicial review of the first MSPB decision. Def.'s CSF Ex. 15 at 1.

[6/]The Board also found that Plaintiff "failed to meet his burden of nonfrivolously alleging jurisdiction" over his whistleblower claim. See Def.'s CSF Ex. 15 at 8.

Under 5 U.S.C. § 7702, a "mixed case" appealable to the district court under § 7703 is a case involving "an action that is <u>both</u> appealable to the MSPB <u>and</u> which allegedly involved discrimination." <u>Sloan</u>, 140 F.3d at 1261 (emphasis in original). Like <u>Conforto</u>, the Board determined that it lacked jurisdiction over Plaintiff's appeal because his decision to retire "was voluntary and therefore did not constitute an 'adverse action' within the meaning of section 7512." <u>Conforto</u>, 713 F.3d at 1116.[7]

Because the Board did not have jurisdiction over the non-discrimination claim, Plaintiff's case is "not a 'mixed case' and any appeal of the jurisdictional determination must be filed in the Federal Circuit Court of Appeals." <u>Sloan</u>, 140 F.3d at 1261; see <u>Conforto</u>, 713 F.3d at 1118 ("It therefore follows that sections 7703(b)(1) and 7702(a)(1)(A) gives this court jurisdiction to review a Board determination that an employee's

---

[7]The Court recognizes that the MSPB decision does not discuss whether Plaintiff's reassignment constitutes an "adverse action." As discussed in Part II(C) of the "Discussion" section of this Order, the Court concludes that the reassignment was an adverse action. However, the only issue before the Board was whether Plaintiff's signing of the settlement agreement was voluntary. See Def.'s CSF Ex. 12, at 6 (stating that Plaintiff "filed a third petition for appeal with the Board, alleging that his April 26, 2008 separation by resignation was involuntary, which is the instant appeal before the Board"). The Board determined that the agreement was voluntary and dismissed Plaintiff's appeal for lack of jurisdiction. Def.'s CSF Ex. 12, at 14. Accordingly, any appeal of the Board's decision still lay with the Federal Circuit notwithstanding this Court's conclusion that the reassignment constitutes an adverse action.

case is not appealable to the Board, regardless of whether the employee has sought to raise claims of agency discrimination."). Indeed, the MSPB notified Plaintiff that his right to judicial review of the Board's final decision lay with the Federal Circuit. <u>See</u> Def.'s CSF Ex. 15, at 12.  Accordingly, this Court lacks jurisdiction to hear Plaintiff's appeal of the final MSPB decision pursuant to 5 U.S.C. § 7703 and, therefore, his due process claims are dismissed.

**B. Bivens Claim**

In his FAC, Plaintiff alleges a violation of Plaintiff's due process rights under the 5th and 14th amendment to the U.S. Constitution. FAC at 24, ¶¶ 72-73.  It is unclear on the face of the FAC whether Plaintiff is making a <u>Bivens</u>-style claim. <u>See</u> FAC at 24, ¶¶ 72-74.  "<u>Bivens</u> created a remedy for violations of constitutional rights committed by federal officials acting in their individual capacities." <u>Consejo de Desarrollo Economico de Mexicali, A.C. v. U.S.</u>, 482 F.3d 1157, 1173 (9th Cir. 2007).  "In a paradigmatic <u>Bivens</u> action, a plaintiff seeks to impose personal liability upon a federal official based on alleged constitutional infringements he or she committed against the plaintiff." <u>Id.</u>

Even assuming the Court has jurisdiction to hear Plaintiff's due process claims, the Court agrees with Defendant that a <u>Bivens</u> action can be maintained against a defendant in his

or her individual capacity only, and not in his or her official capacity. Id.[8/]   In his FAC, Plaintiff specifically filed suit against "Defendant in his official capacity as Secretary of the United States Department of the Army." FAC at 2, ¶ 1.   To the extent Plaintiff relies on a Bivens-style claim the Court finds that a Bivens suit against a federal official "in his or her official capacity would merely be another way of pleading an action against the United States, which would be barred by the doctrine of sovereign immunity." Consejo, 482 F.3d at 1173.[9/]

### C. ADEA Preemption

It is well settled that the ADEA is the exclusive remedy for complaints alleging discrimination based upon age. Ahlmeyer v. Nevada Systems of Higher Educ., 555 F.3d 1051, 1056 (9th Cir. 2009).   In Ahlmeyer, the Ninth Circuit held that the remedial scheme in the ADEA foreclosed § 1983 claims based on ADEA violations. Id. at 1054.   The Court reasoned that the nature of the remedial provisions in the ADEA "demonstrate[d] Congressional intent to preclude the remedy of suits under §

---

[8/]Plaintiff's Opposition does not address Defendant's argument that a Bivens action cannot be maintained in this case. See Pl.'s Opp. at 6-8.

[9/]The Court also holds that the Fourteenth Amendment has no applicability in the instant matter because the provision does not apply to federal government actors. Hall v. Mueller, 84 Fed. Appx. 814 (9th Cir. 2003).   Rather, the "Fourteenth Amendment applies to actions by a State." San Francisco Arts & Athletics, Inc. v. U.S. Olympic Comm., 483 U.S. 522, 543 n. 21 (1987).

1983." Id. at 1057 (quoting Middlesex Cnty. Sewerage Auth. v. Nat'l Sea Clammers Ass'n, 453 U.S. 1, 19-20 (1981)). The Court further reasoned that if a violation of substantive rights under the ADEA could be asserted via a § 1983 action, plaintiffs would be able to make an end run around the ADEA scheme's specific, complex procedural provisions. Id. (citing Zombro v. Baltimore City Police Dep't, 868 F.2d 1364, 1366 (4th Cir. 1989)). Accordingly, the Ahlemeyer Court held that the ADEA "precludes the assertion of age discrimination in employment claims, even those seeking to vindicate constitutional rights, under § 1983." Ahlmeyer, 555 F.3d at 1057.

Once again, it is unclear on the face of the FAC whether Plaintiff's due process claims allege age discrimination in employment. See FAC at 24, ¶¶ 72-74. Plaintiff's Opposition does not address Defendant's argument that the ADEA provides the exclusive remedy for a federal employee making a claim of age discrimination. See Pl.'s Opp. at 6-8. Even assuming the Court has jurisdiction to hear Plaintiff's due process claims, the Court finds that, to the extent Plaintiff asserts any age discrimination claims predicated on the U.S. Constitution, the ADEA's specific, complex procedural provisions provides the exclusive remedy for claims of age discrimination. Okwu v. McKim, 682 F.3d 841, 845 (9th Cir. 2012).

For the foregoing reasons, the Court concludes that it lacks jurisdiction to hear Plaintiff's due process claims and, in the alternative, that Plaintiff has failed to establish a viable age discrimination claim under the U.S. Constitution. Accordingly, the Court GRANTS Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction or in the Alternative for Failure to State a Claim Upon Which Relief Can Be Granted with respect to Plaintiff's due process claims under the Fifth and Fourteenth Amendment of the U.S. Constitution and 5 U.S.C. § 7703.

## II. Plaintiff's ADEA Claim

Defendant argues that Plaintiff's ADEA claim should be dismissed because: (1) Defendant's refusal to rescind the settlement agreement does not constitute an "adverse employment action" under the ADEA and (2) Plaintiff cannot, in the alternative, demonstrate that the proffered reasons for not allowing Plaintiff to rescind the settlement agreement were pretextual. Def.'s Mot. at 10.  Plaintiff argues that his ADEA claim should not be dismissed because: (1) the settlement agreement violates the ADEA's waiver provisions and was not made knowingly and voluntarily; (2) there are disputed material issues of facts over whether Plaintiff suffered an adverse action; and (3) Defendant's proffered reasons for its employment actions are pretextual. Pl.'s Reply at 12-24.

## A.   Exhaustion of Administrative Remedies

Preliminarily, Defendant argues that Plaintiff failed to exhaust his administrative remedies as to any age discrimination claims arising from his initial transfer to a non-supervisory position and as to his ADEA retaliation claim. Pl.'s Reply at 17-19.

Unlike Title VII of the Civil Rights Act, the ADEA "contains no express requirement that a federal employee complainant seek administrative relief, except that an employee who wishes to file suit without pursuing administrative remedies must give the EEOC notice of intent to sue at least 30 days before filing suit." Bankston v. White, 345 F.3d 768, 770 (9th Cir. 2003) (internal citation omitted); see also 29 U.S.C. § 633a(d) (2002) (allowing an individual to file suit without filing an EEOC complaint but requiring notice to EEOC of intent to sue).  "Federal law does, however, allow an employee the option of pursuing administrative remedies, either through the agency's EEO procedures, or through the Merit Systems Protection Board." Bankston, 345 F.3d at 770 (internal citation omitted). "EEOC regulations provide that an aggrieved federal employee who pursues the EEO avenue must consult an EEO counselor within forty-five days of the effective date of the contested personnel action, prior to filing a complaint alleging age discrimination." Shelley v. Geren, 666 F.3d 599, 605 (9th Cir. 2012) (citing 29

C.F.R. § 1614.03, 1614.105(a)(1)).  "[A]lthough the regulatory pre-filing exhaustion requirement at § 1614.105 does not carry the full weight of statutory authority and is not a jurisdictional perquisite for suit in federal court,. . . failure to comply with this regulation [is]. . . fatal to a federal employee's discrimination claim in federal court." Id.

In this case, Plaintiff did not consult an EEO counselor within forty-five days of February 3, 2008, the effective date of the involuntary transfer.[10/]  However, incidents of discrimination not included in an EEOC charge may be considered by a federal court if "the new claims are like or reasonably related to the allegations contained in the EEOC charge." Id. at 606.  "In determining whether a new claim is like or reasonably related to the allegations contained in the previous charge, the court inquires into whether the original

_____

[10/]The Court notes that Plaintiff's formal EEO complaint did not directly allege that his involuntary transfer was based on impermissible age discrimination. See Pl.'s CSF Ex. 1 (Formal EEO Complaint).  However, the EEO Counselor's Report contains statements by Plaintiff, COL Margotta and Director Zedalis that discuss Plaintiff's reassignment to a non-supervisory position. See id. (EEO Counselor's Report).  In addition, Plaintiff's handwritten MSPB complaint explicitly discussed the reassignment. Id. (MSPB Mixed Case Appeal).  Specifically, Plaintiff wrote: "I should not have been removed from my job because I could not as a matter of conscience change the performance appraisals of three civilian employees I rated.  The punishment of removing me from a job I had performed successfully for 16 years was unfair, unjust, too severe and unnecessary." Id. at 3.  Nevertheless, the EEO Counselor's Report and MSPB appeal were not filed within 45 days of the effective date of the involuntary transfer. Def.'s CSF at 4, ¶ 11.

EEOC investigation would have encompassed the additional charges." Id.  "The same is true of a complaint of discrimination submitted to a federal agency's EEO office." Id.

Here, the settlement agreement was drafted in response to the Army's decision to reassign Plaintiff to a non-supervisory position and proposed that Plaintiff could remain in as Operations Officer if he retired on April 30, 2008.  Thus, an EEOC investigation into the Army's decision for refusing to rescind the settlement agreement would necessarily have lead to an investigation over the Army's reasons for transferring Plaintiff out of his supervisory position. Shelley, 666 F.3d at 606.  Indeed, the EEO Counselor's Report contains witness statements and references documents that discuss Plaintiff's reassignment, even though the Report does not contain a direct assertion that Plaintiff's reassignment was made on the basis of his age. See Pl.'s CSF Ex. 1 at 4-5 (EEO Counselor's Report). Accordingly, Plaintiff timely exhausted his available administrative remedies as to his ADEA claim over his initial transfer to a non-supervisory position.

Plaintiff's ADEA retaliation claim appears to be based on the filing of his initial complaint with the EEOC in April 2008 and sending of letters to various elected officials and Army personnel. See Pl.'s CSF Ex. 1; FAC at 16-17, ¶ 42-43.[10/]  Unlike

---

[10/]Plaintiff argues that he raised his retaliation claim "in his EEO fact finding hearing" and cites to Plaintiff's

the initial transfer claim, an EEOC investigation into the Army's refusal to revoke the settlement agreement would not necessarily have lead to an investigation into Plaintiff's retaliation claim. However, the Court finds that Plaintiff's ADEA retaliation claim should not be dismissed for failure to exhaust administrative remedies.

In Bak, a United States Postal Service Employee, Bak, filed race and age discrimination claims with the EEOC and pursued his race claim there, but abandoned his age discrimination claim during the administrative proceedings. Bak v. Postal Service, 52 F.3d 241, 242-43 (9th Cir. 1995).  After receiving a final decision from the EEOC, Bak filed an ADEA suit in federal district court. Id. at 242.  Because Bak abandoned his age discrimination claim before the EEOC, the district court dismissed Bak's case for failure to exhaust administrative remedies. Id. at 243.  On appeal, the Ninth Circuit reversed the district court's ruling and held

> that a claimant is no longer required to
> exhaust his administrative remedies with
> regard to an age discrimination claim prior
> to filing a civil suit.  The result of [29
> C.F.R. §] 1613.513, in effect at the time Bak
> filed his complaint, is to terminate any
> unexhausted administrative proceedings when a
> claimant files a civil suit.  Similarly, an
> exhaustion requirement would terminate any

Declaration and Exhibit 1 of his Concise Statement of Facts. Pl.'s Opp. at 25.  However, the Court was unable to find an explicit retaliation claim in the exhibits and documents cited by Plaintiff. See generally Decl. of Morris, Pl.'s CSF Ex. 1.

civil suit filed.  Thus, the joint effect of
the amended regulations and exhaustion
requirement would be to leave the claimant
without any avenue of relief. . . [A]n
exhaustion requirement in this case would
still prejudice Bak because he has no forum
in which to bring his age discrimination
claim: the time for filing another
administrative complaint has expired, and an
exhaustion requirement would preclude a civil
suit.  The primary goal of the exhaustion
requirement is to prevent simultaneous
proceedings regarding the same claim.

Id. at 244.

A "straight forward reading of Bak" leads the Court to

avoid applying an exhaustion rule in this case, where there are

no simultaneous administrative and judicial proceedings and

application of an exhaustion rule would result in a forfeiture of

Plaintiff's ADEA retaliation claim. Bankston, 345 F.3d at 776.

Because there are no administrative proceedings currently pending

and Plaintiff has no right to further administrative review, the

rationale for the exhaustion rule is not applicable. Id.

Accordingly, the Court concludes that Plaintiff's ADEA

retaliation claim should not be dismissed for failure to exhaust

administrative remedies.

**B.  ADEA Statutory Framework**

The ADEA makes it unlawful for an employer to

discriminate "because of [an] individual's age." 29 U.S.C. §

623(a)(1). The prohibition is "limited to individuals who are at

least 40 years of age." 29 U.S.C. § 631(a).  To prevail on an

-31-

ADEA claim, a plaintiff must prove at trial that age was the "but-for" cause of the employer's adverse action. <u>Gross v. FBL Financial Services, Inc.</u>, 557 U.S. 167, 180 (2009).  "Unlike Title VII, the ADEA's text does not provide that a plaintiff may establish discrimination by showing that age was simply a motivating factor." <u>Id.</u> at 2349.

In order to analyze the evidence in an orderly way, motions for summary judgment regarding ADEA claims may be analyzed using the burden-shifting framework in <u>McDonnell Douglas Corp. v. Green</u>, 451 U.S. 792 (1973). <u>Shelley v. Geren</u>, 666 F.3d at 608 (9th Cir. 2012) (holding that the <u>McDonnell Douglas</u> burden-shifting framework applies to summary judgment motions under the ADEA).

For the first step in the burden-shifting framework, Plaintiff must present evidence of a prima facie case of employment discrimination by showing that (1) he belongs to a protected class, (2) he was qualified for his position, (3) he was subjected to an adverse employment action, and (4) similarly situated individuals outside his protected class were treated more favorably. <u>Davis v. Team Elec. Co.</u>, 520 F.3d 1080, 1089 (9th Cir. 2008).

The Ninth Circuit has held that "the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary

judgment." <u>Chuang v. Univ. of California Davis Bd. of Trustees</u>, 225 F.3d 1115, 1124 (9th Cir. 2000).  "This is because the ultimate question is one that can only be resolved through a searching inquiry--one that is most appropriately conducted by a factfinder, upon a full record." <u>Id.</u> (citing <u>Schnidrig v. Columbia Mach., Inc.</u>, 80 F.3d 1406, 1410 (9th Cir. 1996)) (internal quotation marks omitted).

If Plaintiff establishes a prima facie case, "the burden of production, but not persuasion, then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." <u>Hawn v. Executive Jet Management, Inc.</u>, 615 F.3d 1151, 1155 (9th Cir. 2010).

If Defendant meets this burden, a plaintiff must raise "a triable issue of material fact" as to whether Defendant's proffered reasons for the adverse employment actions are "mere pretext for unlawful discrimination." <u>Hawn</u>, 615 F.3d at 1155. "[A] plaintiff's burden is much less at the prima facie stage than at the pretext stage."  <u>Hawn</u>, 615 F.3d at 1158.

"A plaintiff can show pretext directly, by showing that discrimination more likely motivated the employer, or indirectly, by showing that the employer's explanation is unworthy of credence." <u>Vasquez v. Cnty. of Los Angeles</u>, 349 F.3d 634, 641 (9th Cir. 2003).  Direct evidence is usually composed of "clearly sexist, racist, or similarly discriminatory statements or actions

by the employer." Coghlan v. Am. Seafoods Co., 413 F.3d 1090, 1094-95 (9th Cir. 2005); Earl v. Nielsen Media Research, Inc., 658 F.3d 1108, 1113 (9th Cir. 2011) (holding that "comments from supervisors betraying bias or animus against older workers" constitute direct evidence of age discrimination). "Because direct evidence is so probative, the plaintiff need offer 'very little direct evidence to raise a genuine issue of material fact.'" Id. at 1095. In contrast, circumstantial evidence constitutes "evidence that requires an additional inferential step to demonstrate discrimination." Id. at 1095. A plaintiff's circumstantial evidence must be both specific and substantial in order to survive summary judgment. Becerril v. Pima Cnty. Assessor's Office, 587 F.3d 1162, 1163 (9th Cir. 2009).

### C. Prima Facie Case

Here, the first and second elements of Plaintiff's prima facie case are clearly met: Plaintiff is over forty years old and was qualified for the Supervisory Operations Officer position. See generally Def.'s Mot., ECF No. 70. Further, Defendant conceded during the January 23, 2014, hearing that element four of Plaintiff's prima facie case was also met because a person twenty-five years younger than Plaintiff replaced him as Supervisory Operations Officer. See Decl. of Morris at 12, ¶ 16(e). The point of contention lies over whether Plaintiff experienced an "adverse employment action."

Defendant argues that the Army's "refusal to waive Plaintiff's obligation under a settlement agreement does not constitute an 'adverse employment action' under the ADEA." Def.'s Mot. at 10.  Defendant contends that Plaintiff originally proposed to retire in lieu of reassignment to a non-supervisory position and signed the settlement agreement reducing the essential contents of the memorandum to writing.  See Def.'s CSF Ex. 4 (Memorandum to Debra Zedalis); Def.'s CSF Ex. 5 (Release and Settlement Agreement).  Defendant further notes that Plaintiff waited six weeks after the settlement agreement was signed to request that it be rescinded. Def.'s CSF Ex. 6 (Memorandum for COL Margotta).

In addition to Defendant's refusal to rescind the settlement agreement, Plaintiff argues several other actions taken by the Army constitute an adverse employment action under the ADEA. Pl.'s Opp. at 18.  Specifically, Plaintiff contends that the Army's "refusal to allow Plaintiff to remain in his job, threatened transfer, improper settlement agreement rendering in resignation/retaliation, and refusal to rescind Plaintiff resignation/retirement" all constitute adverse actions. Id.[11]

---

[11]On pages 18 and 19 of his Opposition, Plaintiff refers to roughly 30 paragraphs in the FAC which purportedly show "adverse actions."  Pl.'s Opp. at 18-19.  The Court has discussed virtually all of the content of these paragraphs.  Further, Plaintiff cites "paragraph 21 page 9" of the FAC.  Id. at 18.  In Paragraph 21 of the FAC, Plaintiff argues that his removal from the supervisory position was not mandatory under the NSPS Rules. FAC at 9-10, ¶ 21.  Neither Plaintiff nor [continued...]

The Ninth Circuit defines "adverse employment action broadly." Ray v. Henderson, 217 F.3d 1234, 1240 (9th Cir. 2000). In Ray, the Court held that "an action is cognizable as an adverse employment action if it is reasonably likely to deter employees from engaging in protected activity." Id. at 1243. Accordingly, the Court found "that a wide array of disadvantageous changes in the workplace constitute adverse employment actions." Id. at 1240. Such activities included a transfer of job duties, undeserved performance ratings, transfers to another job of the same pay and status, and dissemination of unfavorable job references. Id. at 1242 (citing Yartzoff v.

_____

Defendant has submitted an exhibit providing the relevant portions of the NSPS Business Rules. However, as discussed in this Order, Plaintiff repeatedly refused to follow directions from his superiors despite repeated warnings that a failure to comply could result in disciplinary action. Therefore, there were numerous reasons to reassign Plaintiff to a non-supervisory position whether or not such reassignment was mandatory under the Rules. In addition, Plaintiff cites paragraphs 50 to 53 in the FAC. Pl.'s Opp. at 19. These paragraphs allege that Director Rozmiarek told Plaintiff, after Plaintiff sent in a job request, that CPAC would offer him a GS-11 job. As discussed in this Order, the Court finds Plaintiff's request to be reassigned to a GS-11 position was not an adverse action because the Army was not required to rescind the settlement agreement and give Plaintiff the GS-11 position merely because he desired it. As COL Margotta stated, "one of the things [Plaintiff] was asking for was essentially to go back into his old position, which would have meant for me as the commander to basically say that he did nothing wrong. . . There was no new compelling evidence or anything that [Plaintiff] could bring to the table that would want me to go back on the agreement." Def.'s Reply at 12-13.

Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987); St. John v. Employment Development Dept., 642 F.2d 273, 274 (9th Cir. 1981); Hashimoto v. Dalton, 118 F.3d 671, 676 (9th Cir. 1997)).

In the instant suit, Plaintiff identifies three actions by the Army that he argues constitute an adverse employment action under the ADEA: (1) refusal to rescind the settlement agreement; (2) denial of Plaintiff's request to be reassigned to the GS-11 position; and (3) reassignment to a non-supervisory position.[12]

Refusing to accept Plaintiff's rescission of the settlement agreement that Plaintiff signed on February 1, 2008, was not an adverse action. Here, Defendant simply refused to permit Plaintiff to withdraw his decision because it believed Plaintiff was irrevocably bound to the terms of the settlement agreement. An employee's commitment to resign under the terms of

---

[12]During the hearing on January 23, 2014, Plaintiff also requested that the Court take notice of paragraph two of the Army's "Request for Disciplinary/Adverse Action" report. See Pl.'s CSF Ex. 14. Paragraph two directs the deciding official to "check one of the disciplinary/adverse actions listed below." Id. at 1. Listed below were the following: "Written Reprimand," "Suspension," "Demotion," and "Removal." Id. The deciding official marked the box next to "Removal." Id. The Court finds that this section of the report, standing alone, does not establish that Plaintiff's reassignment was an adverse action. Given the available options, "removal" was the functional equivalent of "reassignment." Moreover, Plaintiff's handwritten mixed case appeal to the MSPB also marked the box "removal" to "describe[] the agency personnel action or decision [he] was appealing." Pl.'s CSF Ex. 1 (MSPB Mixed Case Appeal).

a settlement agreement is a valid reason for an employer to refuse to accept his withdrawal of that resignation. <u>Green v. General Services Administration</u>, 220 F.3d 1313, 1317 (Fed. Cir. 2000).  Moreover, Plaintiff did not attempt to rescind the settlement agreement until six weeks after it was signed and originally proposed its material terms. <u>See</u> Def.'s CSF Exs. 4 (Memorandum to Debra Zedalis) & 6 (Memorandum to COL Margotta).

Plaintiff argues, however, that the settlement agreement was not made knowingly and voluntarily.  Pl.'s Reply at 12-16.  Specifically, Plaintiff claims, inter alia, that he did not draft the settlement agreement, had only ten minutes to read the agreement, and was not represented by counsel. Decl. of Morris at 6, ¶ 9, ECF No. 26.

"In order to overcome the presumption of voluntariness and demonstrate that a resignation or retirement was involuntary, the employee must satisfy a demanding legal standard." <u>Staats v. U.S. Postal Service</u>, 99 F.3d 1120, 1124 (Fed. Cir. 1996).  "The two principal grounds on which employees have sought to show that their resignations or retirements were involuntary are: (1) that the resignation or retirement was the product of misinformation or deception by the agency. . . and (2) that the resignation or retirement was the product of coercion by the agency." <u>Conforto</u>, 713 F.3d at 1121.  "In order to establish involuntariness on the basis of coercion, an employee must show that the agency

-38-

effectively imposed the terms of the employee's resignation, that the employee had no realistic alternative but to resign or retire, and that the employee's resignation was the result of improper acts by the agency." Staats, 99 F.3d at 1124.

"An example of an involuntary resignation based on coercion is a resignation that is induced by a threat to take disciplinary action that the agency knows could not be substantiated." See Schultz v. United States Navy, 810 F.2d 1133, 1136 (Fed. Cir. 1987) ("If an employee can show that the agency knew that the reason for the threatened removal could not be substantiated, the threatened action by the agency is purely coercive."). The test for voluntariness is objective and requires the employee to establish that a reasonable employee confronted with the same circumstances would feel coerced into resigning or retiring. Garcia v. Dep't of Homeland Security, 437 F.3d 1322, 1329 (Fed. Cir. 2006).

The doctrine of coercive involuntariness is thus a narrow one. Staats, 99 F.3d at 1124. "It does not apply to a case in which an employee decides to resign or retire because he does not want to accept a new assignment, transfer, or other measures that the agency is authorized to adopt, even if those measures make continuation in the job so unpleasant for the employee that he feels that he has no realistic option but to leave." Id. In other words, "the fact that an employee is faced with an

unpleasant situation or that his choice is limited to two unattractive options does not make the employee's decision any less voluntary." Id.

Here, Plaintiff fails to demonstrate how the Army coerced Plaintiff into signing the settlement agreement. Plaintiff originally proposed the material terms of the settlement agreement in his January 7, 2008, memorandum to Director Zedalis, in which he offered to retire on April 30th if the Army allowed him to remain in as Operations Officer. Def.'s CSF Ex. 4.  Plaintiff thus fails to show that the "agency effectively imposed the terms of the employee's resignation or retirement." Staats, 99 F.3d at 1124.  Plaintiff also stated in the same memorandum that his "career plan was to retire from this job in mid 2008." Def.'s CSF Ex. 4 (emphasis added).  Since Plaintiff was planning to retire around the same time as the retirement date listed in the settlement agreement, the Court finds it difficult to see how the employee's decision to retire was the result of improper acts by the Army.  Next, Plaintiff argues that he only had ten minutes to read the agreement. Decl. of Morris at 6, ¶ 9, ECF No. 26.  Plaintiff was notified on January 29, 2008, via email that the settlement agreement was ready for review.  Plaintiff signed the agreement on February 1, 2008, three days after he was first notified that the document was ready for review and two days before he was to be reassigned

to a non-supervisory position.  Accordingly, Plaintiff had ample time to review and sign the agreement.

Plaintiff's decision to sign the agreement effectuating his retirement was not "induced by a threat to take disciplinary action that the agency knows could not be substantiated." See Schultz, 810 F.2d at 1136.  Rather, the Army's basis for demoting Plaintiff and transferring him to a non-supervisory position was substantiated: Plaintiff refused to follow IMCOM's Pay Pool Business Rules and his superiors' directives.

"While it is possible Plaintiff, [himself], perceived no viable alternative" but to sign the settlement agreement, the record indicates that Plaintiff chose to sign the settlement agreement rather than challenge its validity. Christie v. U.S., 518 F.2d 584, 587 (Ct. Cl. 1975).  "The fact remains, [P]laintiff had a choice." Id.  "He could stand pat and fight," but "chose not to." Id.  "Merely because Plaintiff is faced with an inherently unpleasant situation in that his choice was arguably limited to two unpleasant alternatives does not obviate the voluntariness of his resignation." Id.

Finally, Plaintiff argues that the settlement agreement violates the Older Workers Benefit Protection Act ("OWBPA"). Pl.'s Reply at 13-14.  Plaintiff claims that the settlement agreement violated the following portion of the OWBPA:

(f) Waiver

(1) An individual may not waive any right or claim under this chapter unless the waiver is knowing and voluntary.  Except as provided in paragraph (2), a waiver may not be considered knowing and voluntary unless at a minimum—
(A) the waiver is part of an agreement between the individual and the employer that is written in a manner calculated to be understood by such individual, or by the average individual eligible to participate;
. . .
(E) the individual is advised in writing to consult with an attorney prior to executing the agreement;
(F)(I) the individual is given a period of at least 21 days within which to consider the agreement; or
. . .
(G) the agreement provides that for a period of at least 7 days following the execution of such agreement, the individual may revoke the agreement, and the agreement shall not become effective or enforceable until the revocation period has expired;

5 U.S.C. § 626(f) (emphasis added).

Although the Court agrees with Plaintiff that the settlement agreement did not comply with the OWBPA, the Army has not taken the position that Plaintiff waived his ADEA claim by signing the settlement agreement. Def.'s Mot. at 20, n. 7.  The agreement's failure to comply with § 626(f) would only invalidate any waiver of ADEA claims and, therefore, does not invalidate the entire settlement agreement. See Oubre v. Entergy Operations, Inc., 522 U.S. 422, 427-28 (1998) ("Since [Plaintiff's] release did not comply with the OWBPA's stringent safeguards, it is unenforceable against her insofar as it purports to waive or release her ADEA claim.")  Accordingly, the settlement agreement

-42-

remains in effect with respect to all but Plaintiff's ADEA claims.

Similarly, denying Plaintiff's request to be reassigned to the GS-11 position was not an adverse action.  The Army was not required to give Plaintiff the position merely because he desired the position.

The Court, however, finds that Plaintiff's original transfer to a non-supervisory position falls under the Ninth Circuit's broad definition of adverse action.  Ray, 217 F.3d at 1240.  The Ninth Circuit has held that even a lateral transfer constitutes an adverse employment action.  Yartzoff v. Thomas, 809 F.2d 1371, 1376 (9th Cir. 1987) (holding that "[t]ransfers of job duties and undeserved performance ratings, if proven, would constitute 'adverse employment decisions'"); see also St. John v. Employment Development Dept., 642 F.2d 273, 274 (9th Cir. 1981) (finding that a transfer to another job of the same pay and status may constitute an adverse employment decision).  Here, the facts are even stronger than in Yartzoff: Plaintiff was transferred to a lower-grade, non-supervisory position.  See Def.'s CSF at 3, ¶ 9.  Because Plaintiff's involuntary transfer constituted an adverse employment action, Plaintiff satisfies the final element required to establish a prima facie ADEA claim.

### D.  Burden-Shifting Analysis

Since Plaintiff has established a prima facie case of age discrimination regarding his initial transfer to the non-supervisory position, the burden now shifts to Defendant to show that the adverse employment action was taken for legitimate non-discriminatory reasons. <u>Hawn</u>, 615 F.3d at 1155.

Defendant presents several legitimate non-discriminatory justifications for the decision to transfer Plaintiff to a non-supervisory position.  First, Plaintiff repeatedly failed to comply with the Pay Pool Panel's directives and change or provide additional justification for his annual appraisal ratings. <u>See</u> Def.'s CSF Ex. 2 (Notice of Directed Reassignment).[13/]  Second, the Army found that Plaintiff's "demonstrated inability to follow supervisory standards negatively affected this entire organization. [Plaintiff] deliberately refused to abide by written standards and repeated requests from [his] Chain of Command." <u>Id.</u> at 2, ¶ 2.  Finally, the Army determined that Plaintiff's "misconduct adversely affected their organization by [c]ompletely stopping the pay pool process and wasting the valuable man hours associated with

---

[13/]Plaintiff argues that he "was never told that he would be removed from his position if he did not change his evaluations." Pl.'s Opp. at 17; <u>see</u> Decl. of Morris at 3, ¶ 4(b), ECF No. 26. Although the Court notes that Defendant has not submitted an exhibit containing the relevant sections of the IMCOM's NSPS or Pay Pool Business Rules, Plaintiff received several written and oral warnings stating that he had to comply with his commanding officers' directives or face disciplinary action. <u>See</u> Def.'s CSF Ex. 2 at 1, ¶¶ 1(a)-(c).

[Plaintiff's] intentional, deliberate delay" and "affected the employees which represented the USAG-HI Pay Pool by delaying their ability to close out the board and return to their appointed places of duty." Def.'s CSF Ex. 6 at 3, ¶ 6.

Even assuming it constitutes an adverse action, Defendant also articulates several legitimate non-discriminatory reason for not allowing Plaintiff to rescind the settlement agreement: the settlement agreement was based upon Plaintiff's own proposal, Plaintiff entered into the settlement agreement voluntarily, and it was not in the Army's best interests to concede to Plaintiff's request that it be rescinded. Pl.'s Reply at 12.  As COL Margotta explained, "one of the things [Plaintiff] was asking for was essentially to go back into his old position, which would have meant for me as the commander to basically say that he did nothing wrong. . . There was no new compelling evidence or anything that [Plaintiff] could bring to the table that would want me to go back on the agreement." Id. at 12-13.

Thus, the burden shifts back to Plaintiff to raise "a triable issue of material fact" as to whether the Army's proffered reasons for their employment actions are "mere pretext for unlawful discrimination." Hawn, 615 F.3d at 1155.

Plaintiff attempts to present direct evidence of pretext in the form of a discriminatory statement in the Army's "Request for Disciplinary/Adverse Action" report, dated November

8, 2012. Pl.'s Opp. at 25.  Paragraph nine of the document asks the deciding official[14/] to "[l]ist any additional factors you considered in making your determination." Pl.'s CSF Ex. 14 at 6, ¶ 9.  Under paragraph nine, the deciding official wrote: "Past occurrences, deliberate intensions, unwillingness to compromise, age and maturity of the employee, and experience. Id. (emphasis added).  Defendant responds that these comments do "not relate to the decision-maker (COL Margotta) or the decision that is at issue in this case relating to the rescission of the settlement agreement." Def.'s Reply at 12, n. 4.

The Court finds that this statement, in conjunction with Plaintiff's circumstantial evidence, does not raise a genuine issue of material fact as to Defendant's discriminatory animus. A plaintiff must "establish that age was the 'but-for' cause of the employer's adverse action." Wyndham Vacations Resorts, Inc., 2013 WL 5719475 at *6 (D. Haw. Oct. 18, 2013) (quoting Gross, 557 U.S. at 180).  In other words, a "plaintiff must show, at the summary judgment stage, that a reasonable trier of fact could conclude, by a preponderance of evidence, that the Plaintiff would not have been [subject to the adverse action] but for impermissible age discrimination." Parris, 2013 WL 5719475 at

---

[14/]The document states that the deciding official is named in paragraph 11.  See Pl.'s CSF Ex. 14 at 1.  Paragraph 11 lists DCOM Bryson Jhung as the deciding official.  However, the Court notes that LTC Wallace and Deputy Director Brown's names are also listed at the end of the document. Id. at 6.

*6 (D. Haw. Oct. 18, 2013); see Scheitlin v. Freescale Semiconductor, Inc., 465 Fed. Appx. 698, 699 (9th Cir. 2012) (applying Gross's "but for" causation standard at the summary judgment stage). Here, the six-word statement in the document ("age and maturity of the employee") was apparently a stray remark and fails to establish that the Army's decision to initially transfer Plaintiff would not have been made but for impermissible age discrimination. The Army presented a valid, non-discriminatory reason for reassigning Plaintiff to a non-supervisory position: he "deliberately refused to abide by written standards and repeated requests from [his] Chain of Command." Def.'s CSF Ex. 2 at 2, ¶ 2. Subsequently, the Army felt that it was in the "best interest of this organization" to reassign Plaintiff from his Supervisory Operations Officer position. Id. Although the statement may raise some additional concern over whether the Army took into account Plaintiff's age when it decided to reassign him, Plaintiff fails to produce sufficient evidence that the Army's reassignment decision was based solely on Plaintiff's age. See Gross, 557 U.S. at 2350 (holding that the text of the ADEA does not authorize a mixed-motives age discrimination claim).

    Finally, Plaintiff argues that there is circumstantial evidence demonstrating that Defendant's proffered reasons for its

employment actions are pretextual.[15/]   First, Plaintiff argues
that COL Margotta "did not want Plaintiff to continue to work
because there would be disruption." Pl.'s Opp. at 23.   Plaintiff
contends that this was pretextual "because Plaintiff was already
in his position doing his job and there would be no disruption to
keep him there." Id.   The Court finds Plaintiff's argument
unconvincing.   In judging whether COL Margotta's explanation was
"false," it is not important whether it was objectively false
(e.g., whether Plaintiff's removal would actually be disruptive).
Villiarimo v. Aloha Island Air, Inc., 281 F.3d 1054, 1063 (9th
Cir. 2002).   Courts "only require that an employer honestly
believe[] its reason for its actions, even if its reason is
foolish or trivial or even baseless." Id. (quoting Johnson v.
Nordstrom, Inc., 260 F.3d 727, 733 (7th Cir. 2001) (internal
quotation marks omitted).   Here, Plaintiff presents no evidence
that COL Margotta did not honestly believe that allowing
Plaintiff to remain in the Operations Officer position would be

_____

[15/]Plaintiff argues that the Court should not grant summary
judgment because "Plaintiff is still obtaining discovery from
Defendant" and more "evidence of age discrimination is
forthcoming." Pl.'s Opp. at 24-25.   The Court finds that
Plaintiff has had sufficient time and opportunity to submit any
material that might controvert the statements set out in
Defendant's Concise Statement of Facts.   Plaintiff has had fair
notice of Defendant's summary judgment motion, which was filed on
August 9, 2013. See Def.'s Mot., ECF No. 10.   Furthermore, and
importantly, Plaintiff did not file a motion for continuance with
an attached affidavit or declaration stating specifically what
significant facts could be presented through further discovery.
See Fed. R. Civ. P. 56(d).

disruptive.  Indeed, as stated earlier, Plaintiff's supervisors found that he was disruptive because he refused to follow IMCOM's Pay Pool Business Rules and repeated directives from his superiors.

Next, Plaintiff contends that COL Margotta's statement that "there was nothing new [,] no new factors to consider" was pretextual because Brown and LTC Wallace were no longer his supervisors. Pl.'s Opp. at 23.  The fact that Brown and LTC Wallace were no longer Plaintiff's supervisors fails to raise a genuine issue of fact because "circumstantial evidence of pretext must be specific and substantial." Becerril v. Pima County Assessor's Office, 587 F.3d 1162, 1163 (9th Cir. 2009).  The absence of these two supervisors would not appear to provide any reason for the Army to change its position and rescind the settlement agreement.

Finally, Plaintiff argues that COL Margotta's statement that "Plaintiff had to go because he did not take care of his employees" was pretextual because Plaintiff did take care of his employees. See Pl.'s Opp. at 23; Pl.'s CSF Ex. 13 ("Petition for Mr. Dennis Morris").  Again, Plaintiff submits no evidence that COL Margotta did not honestly believe his statement. See Villiarimo, 281 F.3d at 1063.  Colonel Margotta could have easily determined that refusing to make changes to annual performance appraisals does not constitute taking care of one's employees.

Plaintiff's disbelief of COL Margotta's explanations for the reassignment does not create a genuine issue of fact on pretext "because there is no evidence to substantiate his disbelief." Becerril, 587 F.3d at 1163; see Schuler v. Chronicle Board. Co., 793 F.2d 1010, 1011 (9th Cir. 1986) ("These subjective personal judgments do not raise a genuine issue of material fact."). Rather, the Army's reassignment decision was substantiated: Plaintiff failed to follow his commanding officers' directives.

Consequently, the Court finds that Plaintiff has not met his burden of raising a triable issue of material fact as to whether the Army's proffered legitimate reasons for initially transferring Plaintiff to a non-supervisory position were pretextual.  Further, even assuming it constituted an adverse action, Plaintiff has also failed to meet his burden of raising a triable issue of material fact as to whether the Army's refusal to rescind the settlement agreement was "mere pretext for unlawful discrimination." Hawn, 615 F.3d at 1158.  Accordingly, the Court GRANTS Defendant's Motion for Summary Judgment regarding Plaintiff's ADEA claims.

### E.  Plaintiff's ADEA Retaliation Claim

Plaintiff also brings a claim of retaliation under the ADEA. Pl.'s Opp. at 24-25.  Section 623(d) of the ADEA makes it unlawful for an employer to retaliate against an employee for opposing "any practice made unlawful by [the ADEA], or because

-50-

such [employee] has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or litigation under [the ADEA]." 29 U.S.C. § 623(d).  Plaintiff's ADEA retaliation claim appears to be based on the filing of his initial complaint with the EEOC in April 2008 and sending of letters to various elected officials and Army personnel. See Pl.'s CSF Ex. 1; FAC at 16-17, ¶ 42-43.

In order to establish a prima facie case of retaliation, a plaintiff must provide evidence of the following: "(1) he engaged in a protected activity; (2) he suffered an adverse employment action, and (3) there was a causal connection between the two." Surrell v. California Water Serv. Co., 518 F.3d 1097, 1108 (9th Cir. 2008).

Although Plaintiff can likely establish elements one and two necessary for a prima facie retaliation case, the Court concludes that Plaintiff fails to provide evidence of a causal link.

In Clark County School District, an employee filed a retaliation claim based upon her employer's decision to transfer her around the time that she filed charges with the EEOC and the Nevada Equal Rights Commission. Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 271-72 (2001).  The employee in Clark filed her lawsuit on April 1, 1997. Id. at 272.  On April 10, 1997, her supervisor mentioned to her union that the employee was

thinking of transferring the employee to another position. Id.
However, the employer did not receive notification of the lawsuit
or the summons and complaint until April 11, 1997. Id.  The
employee's actual transfer took place in May. Id.

The Supreme Court held that summary judgment for the
employer was appropriate because no causal connection existed
between the employee's filing of her lawsuit and her subsequent
transfer. Clark, 532 U.S. at 272.  According to the Court,
employers "need not suspend previously planned transfers upon
discovering that a Title VII suit has been filed, and their
proceeding along lines previously contemplated, thought not yet
definitely determined, is no evidence whatever of causality." Id.
The Supreme Court also noted that the fact that actual transfer
occurred one month after the employee filed her suit was
"immaterial" in light of the evidence that the employer had
contemplated the transfer before the suit. Id.

In this case, the decision to initially transfer
Plaintiff to a non-supervisory position was made on December 13,
2007, when LTC Wallace delivered a memorandum titled "Subject:
Notice of Direct Reassignment--Dennis Morris." FAC at 8, ¶ 18.
The settlement agreement accepting Plaintiff's retirement was
executed on February 1, 2008. Def.'s CSF at 4, ¶ 13.  The letters
were sent between the 5th and 8th of April 2008, and Plaintiff

first contacted an EEO counselor on April 11, 2008. See FAC at 16-17, ¶ 42-43; Pl.'s CSF Ex. 1 (EEO Counselor Report).

Thus, both of Defendant's alleged adverse employment actions occurred before Plaintiff filed his initial EEOC complaint and sent letters to various elected officials and military personnel.  In other words, Defendant's employment decisions had been finalized and were not influenced by Plaintiff's decision to engage in protected activity. See Clark, 532 U.S. at 272.  The Court therefore GRANTS Defendant's Motion for Summary Judgment regarding Plaintiff's ADEA retaliation claim because he has failed to present evidence of a causal connection between a protected activity and an adverse employment action.

**III. Plaintiff's Jury Demand**

Notwithstanding Defendant's withdrawal of its Motion to Strike Plaintiff's jury demand since in fact the FAC does not include such a demand, the Court notes that Plaintiff's Opposition brief argues that a jury trial should be allowed in this case. Pl.'s Opp. at 26.  The Court will address this contention for informational purposes.

The Supreme Court has determined that a plaintiff does not have a right to a jury trial in ADEA actions against the United States and federal employers. Lehman v. Nakshian, 453 U.S. 156, 168 (1981).  The Supreme Court reasoned that since the federal government may not be sued without its consent and may be

sued only on the terms to which it agrees, a plaintiff has a right to jury trial only if "Congress has affirmatively and unambiguously granted that right by statute." Id.  The Supreme Court concluded that Congress did not explicitly provide for jury trials under the ADEA against the federal government. Id. at 168-69.  Although Plaintiff "respectfully disagrees" with the Lehman decision, this Court is bound by Supreme Court precedent and, therefore, strikes Plaintiff's jury demand.

**CONCLUSION**

For the foregoing reasons, the Court:

(1) GRANTS Defendant's Motion to Dismiss for Lack of Subject Matter Jurisdiction or in the Alternative for Failure to State a Claim Upon Which Relief Can Be Granted with respect to Plaintiff's due process claims; and

(2) GRANTS Defendant's Motion for Summary Judgment with respect to Plaintiff's Age Discrimination in Employment Act claim.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, February 4, 2014.



_____

Alan C. Kay

Sr. United States District Judge

Morris v. McHugh, Civ. No. 13-00182 ACK-KSC: ORDER GRANTING DEFENDANT'S MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT