IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

|  |  |
|---|---|
| DENNIS K. MORRIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civ. No. 13-00182 ACK-KSC |
| | ) |
| JOHN MCHUGH, SECRETARY | ) |
| DEPARTMENT OF U.S. ARMY, | ) |
| | ) |
| Defendant. | ) |
| | ) |

### ORDER DENYING PLAINTIFF'S MOTION FOR RECONSIDERATION

For the following reasons, the Court DENIES Plaintiff Dennis Morris's Motion for Reconsideration and Relief from a Judgment or Order Dated February 4, 2014. Plaintiff largely reiterates arguments previously made and rejected in the Court's earlier ruling, and accordingly the Court will only address some of these repeated arguments.

### FACTUAL AND PROCEDURAL BACKGROUND[1]

This matter arises from Plaintiff Dennis Morris's ("Plaintiff" or "Morris") termination of employment from the United States Army. Plaintiff alleges Defendant John McHugh in his official capacity as United States Secretary of the Army

---

[1] The facts as recited in this Order are for the purpose of disposing of the current motion and are not to be construed as findings of fact that the parties may rely on in future proceedings.

("Defendant" or "Army") discriminated against Morris on the basis of his age. (First Amended Complaint ("FAC") ¶ 1.) On April 23, 2013, Plaintiff filed a First Amended Complaint and brought the following claims against Defendant: (1) violation of the Age Discrimination in Employment Act ("ADEA") and (2) violation of Plaintiff's due process rights under the 5th and 14th amendments to the United States Constitution and 5 U.S.C. § 7701(c)(2)(A). (Id. ¶¶ 70-74.)

On August 9, 2013, Defendant filed a Motion to Dismiss or in the Alternative for Summary Judgment ("Motion for Summary Judgment"), seeking judgment as to all of Plaintiff's claims. (Doc. No. 10.) On February 4, 2014, this Court issued its Order Granting Defendant's Motion to Dismiss or in the Alternative for Summary Judgment ("Feb. 4 Order"). (Doc. No. 35.) In the Feb. 4 Order, the Court held that it lacked jurisdiction to hear Plaintiff's appeal of the final Merit Systems Protection Board ("MSPB" or "Board") decision and, therefore, dismissed Plaintiff's due process claims. (Id. at 23.) Regarding his ADEA claims, the Court found that Plaintiff failed to meet his burden of raising a triable issue of material fact as to whether the Army's proffered reasons for transferring Plaintiff to a non-supervisory position were pretextual. (Id. at 50.) The Court also held that Plaintiff failed to meet his burden of raising a triable issue of material fact as to whether the Army's refusal

to rescind the settlement agreement, even assuming it constituted an adverse action, was mere pretext for unlawful discrimination. (<u>Id.</u>)

On February 14, 2014, Plaintiff filed the instant Motion for Reconsideration, asking the Court to reconsider its Feb. 4 Order pursuant to Federal Rule of Civil Procedure ("Rule") 59(e) and Rules 60(a), (b)(2) and (b)(6). (Doc. No. 36.) Plaintiff attached the following to the Motion for Reconsideration: (1) Declaration of Dennis K. Morris; (2) copy of Plaintiff's deposition transcript; (3) memorandum of law in support of Plaintiff's Motion for Reconsideration; and (4) copy of the Supreme Court's decision in <u>Kloeckner v. Solis</u>, 133 S. Ct. 596 (2012). (<u>Id.</u>) Defendant filed an Opposition on March 13, 2014. (Doc. No. 41.) Plaintiff filed his Reply on March 26, 2014. (Doc. No. 42.)

The Court determines that this matter may be addressed without a hearing under Local Rule 7.2(e). A more extensive procedural and factual background to this case may be found in this Court's Feb. 4 Order.

### STANDARD

A motion for reconsideration must (1) "demonstrate reasons why the court should reconsider its prior decision" and (2) "must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision." <u>Hele Ku KB,</u>

LLC v. BAC Home Loans Servicing, LP, 873 F. Supp. 2d 1268, 1289 (D. Haw. 2012). The Ninth Circuit has held that reconsideration is appropriate if (1) the district court is presented with "newly discovered evidence," (2) the district court "committed clear error or the initial decision was manifestly unjust," or (3) "if there is an intervening change in controlling law." Nunes v. Ashcroft, 375 F.3d 805, 807 (9th Cir. 2004).[2]

Mere disagreement with a previous order is an

---

[2]The District of Hawaii has stated that "[m]otions seeking reconsideration of case-dispositive orders shall be governed by Fed. R. Civ. P. 59 or 60." D. Haw. Local Rule 60.1. Plaintiff filed the instant Motion for Reconsideration pursuant to Federal Rules of Civil Procedure 59(e), 60(a), (b)(2) and (b)(6). Rule 59(e) provides: "A motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment." Rule 60 further provides in relevant part:

> (a) Corrections Based on Clerical Mistakes; Oversights and Omissions. The court may correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record.
> . . .
> (b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:
> . . .
> (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under 59(b);
> . . .
> (6) any other reason that justifies relief.

insufficient basis for reconsideration. <u>See</u> <u>Leong v. Hilton</u> <u>Hotels Corp.</u>, 689 F. Supp. 1572 (D. Haw. 1988). "Whether or not to grant reconsideration is committed to the sound discretion of the court." <u>Navajo Nation v. Confederated Tribes and Bands of the Yakama Indian Nation</u>, 331 F.3d 1041, 1046 (9th Cir. 2003) (citation omitted).

## **DISCUSSION**

### **I.  Whether This Court Made a Clerical Error**

As a preliminary matter, Plaintiff correctly points out that the Feb. 4 Order incorrectly stated that the Army's "Request for Disciplinary Action/Adverse Action" report was dated November 8, 2012, rather than December 3, 2007. (Feb. 4 Order at 45-46; <u>see</u> Pl.'s CSF Ex. 14 at 1.) The Court acknowledges the error and agrees with Plaintiff that the Army executed the report on December 3, 2007. Nevertheless, the Court concludes that the clerical error was harmless and did not affect the Court's determination that Plaintiff failed to put forth sufficient evidence establishing his due process or ADEA claims. <u>See</u> Fed. R. Civ. P. 61 ("Unless justice requires otherwise, no error in admitting or excluding evidence - or any other error by the court or a party - is ground for granting a new trial, for setting aside a verdict, or for vacating, modifying, or otherwise disturbing a judgment or order. At every stage of the proceeding, the court must disregard all errors and defects that do not

affect any party's substantial rights.").

## II.     Whether This Court Should Reconsider its Ruling on Plaintiff's Due Process Claims

Plaintiff argues that this Court should reconsider its ruling regarding Plaintiff's due process claims because (1) Plaintiff never received a hearing before a MSPB administrative law judge on Plaintiff's "harmful procedural error" and "age discrimination" claims, and (2) this Court misinterpreted or misapplied the Supreme Court's decision in Kloeckner v. Solis, 133 S. Ct. 596 (2012). (Pl.'s Mot. at 9-11.)[3]

As the Court stated in its Feb. 4 Order, a "mixed case" appealable to the district court under 5 U.S.C. § 7703 is a case involving "an action that is both appealable to the MSPB and which allegedly involved discrimination." Sloan v. West, 140 F.3d 1255, 1261 (9th Cir. 1988) (emphasis in original). The MSPB dismissed Morris's case on jurisdictional grounds because the Board determined that his decision to retire was voluntary and therefore did not constitute an "adverse action" appealable to

---

[3]Plaintiff also argues that he "did not raise a Bivens Action" and that "[t]his was explained to the Defense Counsel before Plaintiff's deposition, during the deposition and at oral argument." (Pl.'s Mot. at 10.) The Court's finding in the Feb. 4 Order that a Bivens-style claim could not be maintained against the Army was not the basis for dismissing Plaintiff's due process claims. (See Feb. 4 Order at 16-23.) Rather, the Court was merely disposing of any potential Bivens claims that Plaintiff may have been seeking to assert. (See id. at 23-24.)

the MSPB. (See Def.'s CSF Ex. 15.)[4] Because the Board did not

have jurisdiction over Plaintiff's non-discrimination claim, this

Court found that Plaintiff's case was not a "mixed case," and any

appeal of the MSPB's jurisdictional determination must be filed

in the Federal Circuit Court of Appeals, rather than in federal

district court. (See Feb. 4 Order at 22-23.)[5]

Plaintiff argues that this Court's holding runs

contrary to the Supreme Court's decision in Kloeckner and quotes

the following language from that case:

_____

[4]The Court refers to Defendant's and Plaintiff's concise
statement of facts that were filed to address Defendant's Motion
to Dismiss or in the Alternative for Summary Judgment to
establish the background for Plaintiff's Motion for
Reconsideration.

[5]Plaintiff further contends that both the Equal Employment
Opportunity Commission ("EEOC") and the MSPB "deemed [his] case
as a mixed case." (Pl.'s Reply at 4.) This Court observes that
the EEOC and MSPB decisions referred to Plaintiff's "mixed case
complaint." (See Def.'s CSF Ex. 11 at 1, Ex. 12 at 5-6, Ex. 13 at
1 & 3, Ex. 15 at 4-5.) However, Plaintiff appears to conflate the
term "mixed case complaint" with "mixed case appeal." As the
Ninth Circuit in Sloan makes clear, "a 'mixed case appeal' is not
a subset of a 'mixed case complaint.'" Sloan, 140 F.3d at 1259. A
"mixed case complaint" is merely a "complaint which alleges the
employee suffered an adverse employment action that was affected.
. . by unlawful discrimination." Id. In contrast, a "mixed case
appeal" is "an action that is both appealable to the MSPB and
which allegedly involved discrimination." Id. at 1261 (emphasis
in original). "The MSPB must decide it has jurisdiction over a
case before it becomes a 'mixed case appeal.'" Id. at 1259. An
employee may seek judicial review in district court if the Board
dismisses his mixed case appeal. See 5 U.S.C. § 7703. In this
case, however, the MSPB determined that Plaintiff's case did not
constitute a "mixed case appeal" because his resignation was
voluntary and, therefore, was not an appealable action. (See Feb.
4 Order at 22-23.)

> A federal employee who claims that an agency
> action appealable to the MSPB violates an
> antidiscrimination statute listed in [5
> U.S.C.] § 7702(a)(1) should seek judicial
> review in district court, not in the Federal
> Circuit. That is so whether the MSPB decided
> her case on procedural grounds or instead on
> the merits. Kloeckner therefore brought her
> suit in the right place.

Kloeckner, 133 S. Ct. at 607.

Citing to the Federal Circuit's decision in Conforto, this Court found in its Feb. 4 Order that Kloeckner does not explicitly address whether jurisdictional dismissals by the MSPB should go to the Federal Circuit or to a district court. Conforto v. Merit Systems Protection Board, 713 F.3d 1111, 1117 (Fed. Cir. 2013.) In Conforto, the Federal Circuit held that the "statutory text, the Court's rationale in Kloeckner, our own prior decisions, and the decisions of other courts all indicate that an appeal from the Board's dismissal for lack of jurisdiction belongs in this Court." Id. The Conforto decision comports with Ninth Circuit case law holding that an appeal from a MSPB jurisdictional dismissal belongs in the Federal Circuit. See, e.g., Sloan, 140 F.3d at 1262. In the instant Motion for Reconsideration, Plaintiff does not direct the court to any recent Ninth Circuit or Federal Circuit cases that run contrary to the Conforto and Sloan decisions. See Nunes, 375 F.3d at 807 ("Reconsideration is appropriate. . . if there is an intervening change in controlling law.")

Although the Court agrees with Plaintiff that all of the acts giving rise to his claims appear to have occurred in Hawaii, any appeal of the final MSPB decision must be filed with the Federal Circuit, pursuant to the Ninth Circuit and Federal Circuit's holdings in Sloan and Conforto. Indeed, as the Court noted in the Feb. 4 Order, the MSPB expressly notified Plaintiff that his right to judicial review of the Board's final decision lay with the Federal Circuit. (Feb. 4 Order at 23.) Accordingly, this Court did not make a manifest error of law when it dismissed Plaintiff's due process claims and, therefore, DENIES Plaintiff's Motion for Reconsideration with respect to his due process claims.[6]

III.     **Whether This Court Should Reconsider its Ruling on Plaintiff's ADEA Claims**

Plaintiff argues that this Court should reconsider its ruling regarding Plaintiff's ADEA claims because, inter alia, (1)

---

[6]The Court notes that the MSPB in its February 14, 2013 decision notified Plaintiff that any appeal should be filed with the Federal Circuit. (Def.'s CSF Ex. 15 at 12-13.) However, Plaintiff adamantly refuses to file an appeal with the Federal Circuit even though this Court in its Feb. 4 Order ruled that his due process claims should be heard before the Federal Circuit. (See Feb. 4 Order at 22-23.) In fact, Plaintiff argued this matter on a motion for reconsideration and, therefore, it is clear that Plaintiff has not sought to have his due process claims transferred to the Federal Circuit, pursuant to 28 U.S.C. § 1631. See Powell v. Dep't of Defense, 158 F.3d 597, 600 n.3 (D.C. Cir. 1998) ("Even if this were a case in which the 'interests of justice' required such a transfer, [plaintiff] has not sought such relief in this court.") (internal citation omitted).

Plaintiff has not had sufficient time to complete discovery; (2) Plaintiff's deposition transcript was unavailable at the time he filed his Opposition to Defendant's Motion for Summary Judgment; and (3) an issue of material fact exists over whether Plaintiff's retirement was voluntary. (Pl.'s Mot. at 4-9.) For the following reasons, the Court DENIES Plaintiff's Motion for Reconsideration with respect to his ADEA claims.

### A. Plaintiff Had Sufficient Time to Conduct Discovery

Plaintiff's first argument is that the Summary Judgment Order failed to note that Defendant never answered Plaintiff's complaint,[7/] the discovery deadline was May 30, 2014, and Plaintiff indicated in his Memorandum in Opposition and at the January 23, 2014 hearing that he wanted additional time to conduct discovery. (Id. at 4.) As such, Plaintiff requests the Court to reconsider its Feb. 4 Order and allow Plaintiff to complete discovery. (Id.)

This Court found in its Feb. 4 Order, and continues to

_____

[7/]Contrary to Plaintiff's assertion, there is no requirement under the Federal Rules that a plaintiff must file an answer before filing a motion to dismiss or a motion for summary judgment. See Underhill v. Porter, 35 F.3d 560 (5th Cir. 1994) (finding that defendant "was not required to file an answer before the district court ruled on his motions") and Rivera v. AuthorHouse, Civ. No. 3:07cv268, 2008 WL 131046 at *12 (N.D. Ind. Jan. 10, 2008) (concluding that "defendants [were] not required to file an answer because they filed motions to dismiss"). Moreover, Defendant filed a detailed Concise Statement of Facts with sixteen attached exhibits. Defendant's Concise Statement of Facts was sufficient to notify Plaintiff as to which factual allegations in the FAC the Army admitted or denied.

find, that Plaintiff has had sufficient time and opportunity to submit any material that might controvert the exhibits and statements set forth in Defendant's Concise Statement of Facts. (Feb. 4 Order at 48, n. 15.) Defendant's Motion for Summary Judgment and Concise Statement of Facts were filed on August 9, 2013. (Doc. Nos. 10-11.) Plaintiff argues that the hearing date for Defendant's Motion for Summary Judgment was originally scheduled for February 10, 2014, but "[f]or reasons unknown to Plaintiff, the hearing was advanced to January 23, 2014, thereby advancing the time Plaintiff had to oppose the Defendant's Motion." (Pl.'s Mot. at 5.) However, Plaintiff ignores the fact that this Court granted two joint requests for continuances; the hearing for Defendant's Motion for Summary Judgment was originally set for November 4, 2013, but was eventually continued to January 23, 2014. (Doc. Nos. 17, 19 & 23.) Because the deadline for Plaintiff's Opposition was January 2, 2014, Plaintiff had nearly five months to conduct discovery prior to the filing of his Opposition. <u>See</u> D. Haw. Local Rule 7.4 ("An opposition to a motion set for hearing shall be served and filed not less than twenty-one days prior to the date of hearing.")

Further, and importantly, Plaintiff failed to abide by Federal Rule of Civil Procedure 56(d)[8/] by filing a motion for

---

[8/]Rule 56(d) provides that "[i]f a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify [continued on next page]

continuance with an attached affidavit stating specifically what significant facts could be presented through further discovery in support of Plaintiff's ADEA claims. See Fed. R. Civ. P. 56(d). Instead, Plaintiff's Memorandum in Opposition to the Army's Motion for Summary Judgment vaguely asserted that "Plaintiff is still obtaining discovery from Defendant" and more "evidence of age discrimination is forthcoming." (Feb. 4 Order at 48.) As this Court previously stated, "[f]ailure to comply with the requirements of Rule 56(d) is a proper ground for denying discovery and proceeding to summary judgment." Uy v. Wells Fargo Bank, N.A., Civ. No. 10-00204 ACK-RLP, 2011 WL 1235590 at *3 (D. Haw. Mar. 28, 2011) (quoting Brae Transp., Inc. v. Coopers & Lybrand, 790 F.2d 1439, 1443 (9th Cir. 1986)); see State of Cal., on Behalf of California Dept. of Toxic Substances Controls v. Campbell, 138 F.3d 772, 779 (9th Cir. 1998) ("References in memoranda and declarations to a need for discovery do not qualify as motions under Rule [56(d)]."); see also U.S. Alpine Land & Reservoir Co., 984 F.2d 1047, 1049 (9th Cir. 1993) (holding that Rule 60(b)(6) "relief may not be had where the party seeking reconsideration has ignored normal legal recourses"). Accordingly, this Court's decision to grant Defendant's Motion

───────────────

its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declarations or to take discovery; or (3) issue any other appropriate order." Fed. R. Civ. P. 56(d).

for Summary Judgment notwithstanding Plaintiff's assertion that
he was still obtaining discovery was not manifestly unjust.
See Nunes, 375 F.3d at 807.

**B.    Consideration of Attached Deposition Transcript
and Declaration**

In addition to requesting reconsideration in order to
conduct more discovery, Plaintiff asks this Court to consider his
attached deposition transcript[9/] and declaration.[10/] (Pl.'s Mot. at
4.) Pursuant to Federal Rule of Civil Procedure 60(b)(2),
Plaintiff must establish that the declaration and deposition
constitute "newly discovery evidence." Feature Realty, Inc. v.
City of Spokane, 331 F.3d 1082, 1093 (9th Cir. 2003) (citing
Coastal Transfer Co. v. Toyota Motor Sales, Inc., 833 F.2d 208,
211 (9th Cir. 1987)). Plaintiff must also have "exercised due
diligence to discover the evidence," and "the newly discovered
evidence must be of such magnitude that production of it earlier
would have been likely to change the disposition of the case."
Id.

Preliminarily, and as discussed more in detail below,
Plaintiff obviously could have set forth in a declaration in

---

[9/]The Court notes that Defendant had attached a portion of
Plaintiff's deposition transcript, roughly 15 pages, to its Reply
in Support of the Motion for Summary Judgment.

[10/]The declaration attached to the instant Motion for
Reconsideration is an entirely new declaration; Plaintiff's
Concise Statement of Facts also contained a declaration by
Morris. (See Pl.'s CSF.)

opposition to Defendant's Motion whatever he had stated in his deposition.

Under the Federal Rules, evidence is not "newly discovered" if it was in the moving party's possession before the judgment was rendered. Id. Plaintiff contends that his own deposition testimony constitutes newly discovered evidence because it was not obtained until after December 27, 2013, the date upon which Plaintiff filed his Opposition to Defendant's Motion for Summary Judgment and Concise Statement of Facts. (Doc. Nos. 25-26.) However, the Ninth Circuit has held that a party possessing evidence for as little as eight days prior to a court's summary judgment ruling could not invoke Rule 60(b)(2). See Feature Realty, 331 F.3d at 1093 (affirming district court's denial of Rule 60(b)(2) motion); see also Gonzalez-Pina v. Rodriguez, 407 F.3d 425, 433-34 (1st Cir. 2005) (affirming district court's denial of Rule 60(b)(2) motion where movant had obtained deposition testimony two weeks prior to summary judgment). Plaintiff cannot now seek refuge under Rule 60(b)(2) because he obtained the deposition at the very latest on January 13, 2014, three weeks before the Court's issuance of the Feb. 4 Order. Moreover, as explained above, Plaintiff did not file a Rule 56(d) motion requesting an extension of time to submit a copy of the deposition transcript. See Fed. R. Civ. P. 56(d).

Similarly, Plaintiff's attached declaration does not

constitute "newly discovered evidence" because Plaintiff's own testimony was clearly always in his possession. <u>See</u> <u>Feature Realty</u>, 331 F.3d at 1093. Plaintiff's declaration is also not based on newly discovered evidence; instead, Plaintiff's declaration discusses evidence that was already before the Court on Defendant's Motion for Summary Judgment. <u>See</u>, <u>e.g.</u>, Decl. of Morris at 6 ("I presented evidence showing that. . . persons who worked under me submitted letters to Colonel Margotta and the letters supported me as a good worker and supervisor who should be kept.")

Even assuming Plaintiff's attached declaration and deposition constitute "newly discovered evidence" within the meaning of Rule 60(b)(2), he must also have "exercised due diligence to discover the evidence," and "the newly discovered evidence must be of such magnitude that production of it earlier would have been likely to change the disposition of the case." <u>Feature Realty</u>, 331 F.3d at 1093.

Here, Plaintiff has not argued that he exercised due diligence in obtaining the deposition transcript and simply states that he did not receive a copy of the transcript until January 13, 2014. (Pl.'s Mot. at 5.) Plaintiff does not explain his inability to obtain the transcript before January 13, 2014, even though he was deposed on December 16, 2013. (<u>Id.</u>) Furthermore, as discussed below, a copy of the deposition

transcript would not have changed the Court's determination that Plaintiff did not produce sufficient evidence establishing that the Army discriminated against him on the basis of his age. Accordingly, Plaintiff fails to meet any of the requirements of Feature Realty.

## C.    Plaintiff's Intentions to Retire

Plaintiff's next argument is that the Court erred when it found that Morris "had intentions to retire based upon [a] single sentence in a letter he sent dated January 7, 2008." (Pl.'s Mot. at 5.)[11]

This Court's finding that Plaintiff had intentions to retire was in response to his argument that the settlement agreement effectuating his retirement was not made voluntarily. (Feb. 4 Order at 40.) As stated in the Feb. 4 Order, an employee must show the following in order to establish that a retirement decision was involuntary and a product of coercion: the agency effectively imposed the terms of the employee's resignation, the employee had no realistic alternative but to resign or retire, and the employee's resignation was the result of improper acts by

_____

[11]Plaintiff also repeats his previous argument that he was never given a "direct verbal order" to change the annual performance appraisals. (Pl.'s Reply at 7; Pl.'s Dep. Transcript at 140-41.) This argument is a distinction without a difference because Plaintiff admits in his own amended complaint that he received several written and oral directives from his superiors instructing him to change the appraisals or face disciplinary action. (Feb. 4 Order at 3-4, 44 n. 13; FAC ¶¶ 12-13.)

the agency. <u>Staats v. U.S. Postal Service</u>, 99 F.3d 1120, 1124 (Fed. Cir. 1996).

Because Plaintiff expressly stated in the January 7, 2008 memorandum to Director Debra Zedalis that his "career plan was to retire from this job in mid 2008," this Court found that Morris was planning to retire around the same time as the retirement date listed in the settlement agreement and, therefore, failed to establish that his "decision to retire was the result of improper acts by the Army." (Feb. 4 Order (emphasis added).) Although Plaintiff directs the Court to several actions that he claims indicate he had no intention of retiring, Plaintiff's statement in the January 7, 2008 memorandum that his career plan was to retire in mid-2008 was unequivocal. In this memorandum, Plaintiff offered to "submit a formal written intent to retire" if the Army allowed him to remain in as Operations Officer until he retired in late April. (Def.'s CSF Ex. 4.) These terms were incorporated into the settlement agreement that the Army prepared. Pursuant to the settlement agreement, Morris agreed to "resign effective [April 26, 2008] and apply for retirement benefits" in exchange for the Army "allow[ing] Morris to remain in his position as Supervisory Operations Officer. . . until April 26, 2008." (<u>Id.</u> Ex. 5.) Plaintiff had sufficient time to review the settlement agreement. As noted below, Morris signed the settlement agreement on February 1, 2008, three days after he

was first told that the document was ready for review and two days before he was to be reassigned. (Feb. 4 Order at 40-41.) Plaintiff also had ample opportunity to obtain advice from an attorney. Specifically, Plaintiff could have sought legal advice from December 13, 2007, the date upon which he received the "Notice of Directed Reassignment" from Lieutenant Colonel Michael Wallace, to February 1, 2008, the date upon which he signed the settlement agreement effectuating his retirement. Accordingly, this Court did not commit an error when it found that Plaintiff had intentions to retire. Nunes, 375 F.3d at 807.

Nevertheless, Plaintiff now argues that this Court's finding runs contrary to Perlman v. United States, 490 F.2d 928 (Ct. Cl. 1974), and Scharf v. Dep't of the Air Force, 710 F.2d 1572 (Fed. Cir. 1983). These cases, which Plaintiff did not cite previously, do not change the Court's determination that the Army's refusal to accept Plaintiff's rescission of the settlement agreement was not an adverse action.

In Perlman, a Civil Service employee's decision to retire was held involuntary because the employee attempted to seek verification that retirement would void his appeal rights, but had fewer than eight hours to contact the Civil Service Commission and confirm the information integral to his retirement decision. Perlman, 490 F.2d at 930-31. Here, Plaintiff was not faced with same time constraints as the employee in Perlman:

-18-

Morris signed the settlement agreement on February 1, 2008, three days after he was first notified that the document was ready for review and two days before he was to be reassigned to a non-supervisory position. (Feb. 4 Order at 40-41.) Further, and in contrast to Perlman, Plaintiff does not argue that he was uncertain of the effect of signing the settlement agreement. In addition, the employee in Perlman sought to withdraw his retirement application a week after he submitted it whereas Morris waited six weeks to attempt to rescind the settlement agreement. Perlman, 490 F.2d at 931.

Plaintiff also relies on the Federal Court of Claim's decision in Scharf to argue that Plaintiff did not sign the settlement agreement voluntarily. Specifically, Plaintiff directs the Court to the following language from Scharf:

> With freedom of choice as the guiding principle, it has been held that the element of voluntariness is vitiated when (1) an employee resigns under duress brought on by government action; (2) an employee unsuccessfully tries to withdraw his resignation before its effective date; (3) an employee submits a resignation under time pressure; or (4) an employee fails to understand the situation due to mental incompetence. Several other cases have also indicated that a resignation will be held involuntary if obtained by agency misrepresentation or deception.
>
> . . .
>
> An employee is not required to show an intent to deceive on the part of the agency in order for his retirement to be held involuntary.

> Rather, it is sufficient if the employee
> shows that a reasonable person would have
> been misled by the agency's statements. We
> have in the past applied an objective test in
> situations involving duress or coercion. We
> believe that an objective test is equally
> applicable to situations involving
> misrepresentations or deception.

Scharf, 710 F.2d at 1574-75 (internal citations omitted).

The facts in Scharf are clearly distinguishable from this case. Here, Plaintiff alleges that he spoke with Joseph Rozmiarek, Director of Civilian Personnel, after he received his notice of reassignment, and Rozmiarek "put the idea in [his] head" that he should offer a compromise. (Pl.'s Dep. Transcript at 113-14.) According to Plaintiff, Rozmiarek told him that "one possibility would be to retire at a certain date in exchange" for the Army allowing him to remain in his supervisory position. (Id. at 114) However, unlike the employee in Scharf, Plaintiff does not allege that, based on Rozmiarek's statements, he failed to understand the consequences of submitting a voluntary resignation. See Scharf, 710 F.2d at 1575 ("In this case, the petitioner contends that his optional retirement was involuntary because he was misled and failed to understand that he could not return to the rolls to exhaust his accumulated sick leave if his optional retirement preceded his disability retirement. The record clearly indicates that petitioner's failure to understand was due to the fact that he was misled as to the consequences of

his optional retirement by the agency counselor, Mr. Tanner.") In particular, Plaintiff does not assert that Rozmiarek misled him to believe that he would have the ability to rescind his retirement offer and remain as Supervisory Operations Officer.

Furthermore, Plaintiff in the instant Motion for Reconsideration does not argue that he failed to understand the situation due to mental incompetence. Plaintiff also does not establish that he was forced to sign the settlement agreement under time pressure. As noted above, Plaintiff had almost a week in which to review and sign the settlement agreement. (Feb. 4 Order at 40-41.) Moreover, the settlement agreement provided the essential terms he had proposed.

Accordingly, the only remaining issues are whether Plaintiff signed the settlement agreement "under duress brought on by government action" and whether Plaintiff "unsuccessfully trie[d] to withdraw his resignation before its effective date." Scharf, 710 F.2d at 1574.

With respect to the first issue, Plaintiff cites to page 143 of his deposition transcript and argues that he felt that he "signed the Agreement under duress." (Decl. of Morris at 4.) The deposition transcript provides, in relevant part:

> A: But that memorandum that I was
> handed, that settlement agreement, I signed
> it under duress, I was in a situation where I
> wanted to remain in my job, and I would not
> have signed that agreement if I had known
> that my ADEA rights were being violated, I

> would not have signed it if they said to me:
> Here's the agreement, you have 21 days to
> think about it, go see a lawyer, I would
> never have signed that agreement in the form
> that it was, but I didn't realize it was
> legally flawed and, per se, age
> discrimination at the time.

(Pl.'s Dep. Transcript at 143-44.) The mere fact that Plaintiff
"wanted to remain in [his] job" does not overcome the presumption
that his decision to sign the settlement agreement was voluntary.
See Christie v. U.S., 518 F.2d 584, 587 (Ct. Cl. 1975) ("Employee
resignations are presumed to be voluntary.") In order to show
that he signed the settlement agreement under duress, Plaintiff
must demonstrate "that circumstances permitted no other
alternative" and "that said circumstances were the result of
coercive acts of the opposite party." Id. Plaintiff contends that
he "felt pressured" to sign the settlement agreement because his
only other alternatives were to accept the transfer to the non-
supervisory position or "be considered AWOL." (Decl. of Morris at
4.) However, the mere "fact that an employee is faced with an
unpleasant situation or that his choice is limited to two
unattractive options does not make the employee's decision any
less voluntary." Staats, 99 F.3d at 1124. Moreover, COL Margotta
expressly informed Morris of his right to challenge the
reassignment through a grievance procedure, but he declined to
grieve this matter. (See Def.'s CSF Ex. 3.) Rather than
challenging, rejecting, or accepting the reassignment, Plaintiff

chose to sign the settlement agreement and agree to retire in exchange for the Army allowing him to remain in the supervisory position.[12/]

Plaintiff also appears to argue that his decision was made under duress because he would not have signed the settlement agreement had he known it violated the Older Workers Benefit Protection Act ("OWBPA"). The Feb. 4 Order directly addressed Plaintiff's argument that the settlement agreement was invalid because it violated the OWBPA. (Feb. 4 Order at 41-43.) As this Court previously stated, the Army is not defending against Plaintiff's ADEA claims by arguing his ADEA claim was waived under the settlement agreement. (Id. at 42.) The settlement agreement's failure to comply with the OWBPA would only invalidate any waiver of federal claims under the ADEA and, therefore, does not invalidate the entire agreement. See, e.g., Oubre v. Entergy Operations, Inc., 522 U.S. 422, 427-28 (1998) ("Since Oubre's release did not comply with the OWBPA's stringent safeguards, it is unenforceable against her insofar as it purports to waive or release her ADEA claim. As a statutory

---

[12/]The Court also finds that the settlement agreement was a contract and, as such, there is no evidence or argument that the Army failed to fulfill its obligations under the settlement agreement. See Greco v. Dep't of Army, 852 F.2d 558, 560 (Fed. Cir. 1988) ("It is axiomatic that a settlement agreement is a contract."). The record clearly indicates that, pursuant to the terms of the settlement agreement, Morris remained in the Supervisory Operations Officer position until his effective retirement date, April 26, 2008.

matter, the release cannot bar her ADEA suit, irrespective of the validity of the contract as to other claims."); <u>Harmon v. Johnson & Johnson</u>, No. 11-56898, 2013 WL 6501354 (9th Cir. Dec. 12, 2013) (holding that "the failure to comply with the OWBPA did not invalidate the release as to Harmon's state law claims because the OWBPA applies only to federal claims under the [ADEA]"); <u>Lange v. DOI</u>, 94 M.S.P.R. 371, 376 (2003) ("Since the appellant has shown no basis for invalidating the entire settlement agreement, we find that the settlement agreement is still in effect with respect to all but the appellant's ADEA-related claim."). Consequently, the Court determines that Plaintiff fails to raise a genuine issue of material fact as to whether Plaintiff signed the settlement agreement under duress.

With respect to the second issue, <u>Scharf</u> held that the "element of voluntariness is vitiated when. . . an employee unsuccessfully tries to withdraw his resignation before its effective date." <u>Scharf</u>, 710 F.2d at 1574 (citing <u>Cunningham v. United States</u>, 423 F.2d 1379, 1384-85 (Ct. Cl. 1970)). However, the <u>Scharf</u> court never discussed this holding because the plaintiff-employee in that case never attempted to withdraw his resignation. <u>See</u> <u>id.</u> at 1572-74. This Court must therefore examine the Court of Claim's decision in <u>Cunningham v. United States</u>, the case cited by <u>Scharf</u>.

In <u>Cunningham</u>, an Air Force civilian employee submitted

a written resignation on May 23, 1959, with an effective retirement date of June 12, 1959. <u>Cunningham</u>, 423 F.2d at 1380. A mere eight hours after submitting it, she attempted to orally withdraw the resignation. <u>Id.</u> After her oral request was denied, she wrote two letters to her Commanding General requesting a grievance hearing pursuant to Air Force regulations and asserting that her resignation letter was a product of duress. <u>Id.</u> at 1380-81. The Air Force refused to allow the employee to withdraw the resignation despite her request for a grievance hearing and claim of duress. <u>Id.</u> at 1381-82. The Court of Claims found that there was no valid determination by the Air Force that her resignation was voluntary and not a product of duress, and that she was not provided with a procedurally valid grievance hearing as mandated by Air Force regulations. <u>Id.</u> at 1382. Accordingly, the court found that the employee's separation from the Air Force was an "adverse action" taken by the agency that resulted in her "removal." <u>Id.</u>

In this case, it is undisputed that Morris attempted to rescind the settlement agreement prior to the effective date of his retirement. As discussed below, the Court has distinguished the ruling in <u>Cunningham</u> as not applicable to the facts of this case. Moreover, Plaintiff has enjoyed the benefits of the settlement agreement by being allowed to remain in his position for some six weeks before he attempted to rescind the agreement;

he had received a substantial portion of the quid pro quo for the settlement. Plaintiff signed the settlement agreement on February 1, 2008, and only attempted to rescind it six weeks later. Because the retirement date listed in the settlement agreement was April 26, 2008, Plaintiff had received roughly one-third of the consideration offered by the Army before he attempted to rescind the settlement agreement.

In Cunningham, the court found that the Air Force did not make a valid determination that the employee's resignation was voluntary because it "ignored her clear assertion of duress." Id. Here, Morris did not attempt to notify Army personnel that he signed the settlement agreement under duress when he asked them to rescind the agreement; rather, he simply stated in the March 14, 2008 memorandum that it was a "drastic mistake" to sign the settlement agreement. (Def.'s CSF Ex. 6 at 1.) Although Plaintiff now argues in the declaration attached to the instant Motion for Reconsideration that he "signed the Agreement under duress," his conclusory statement lacks detailed facts and supporting evidence demonstrating that he notified the Army that he signed the agreement under duress. See F.T.C. v. Neovi, Inc., 604 F.3d 1150, 1159 (9th Cir. 2010) (finding that a conclusory, uncorroborated, or self-serving affidavit may not create a genuine issue of material fact). As such, the Army was not required under Cunningham to determine whether Morris's

resignation was a product of duress and therefore involuntary. In fact, the Army had little reason to question whether the Plaintiff's retirement was voluntary since he proposed the material terms of the settlement agreement.

Additionally, there is nothing in the record that indicates that the Army has regulations similar to the Air Force regulations in Cunningham requiring the Army to grant Morris a grievance hearing if he requested one after he sought to rescind the settlement agreement.

Moreover, Plaintiff waited six weeks to attempt to rescind the settlement agreement, while the employee in Cunningham sought to withdraw the settlement agreement eight hours after she sent the resignation letter. Finally, Plaintiff ignores the fact that the Army, unlike the Air Force in Cunningham, presented several legitimate reasons for not rescinding the settlement agreement. (See Feb. 4 Order at 45.)

The Court also notes that several MSPB cases have held that a separation pursuant to a retirement is deemed involuntary when the agency improperly denied the employee's request to withdraw his retirement before its effective date. See Schwartz v. U.S. Postal Service, 68 M.S.P.R. 142, 145 (1995); Jostsons v. U.S. Postal Service, 58 M.S.P.R. 74, 79 (1993), aff'd, 26 F.3d 139 (Fed. Cir. 1994). These cases have further held that an employee has the right to rescind his decision to

retire at any time before it is to be effective, unless the
agency has a valid reason for refusing to permit such a
rescission. See id. "The agency [bears] the burden of proving
that it had" such a reason. Olsen v. Dep't of Army, 65 M.S.P.R.
60, 63 (1994). If "the agency improperly denies the request, the
employee's separation is deemed involuntary and tantamount to an
appealable removal." Douglas v. Dep't of Defense, 108 M.S.P.R.
244, 248 (2008). Here, the Army refused to permit Morris to
rescind the settlement agreement effectuating his retirement.
However, Plaintiff's retirement cannot be deemed involuntary
because the Federal Circuit has held that an employee's
commitment to resign under the terms of a settlement agreement is
a valid reason for an agency to refuse to accept his withdrawal
of that resignation. Green v. General Services Administration,
220 F.3d 1313, 1317 (Fed. Cir. 2000); Tretchick v. Dep't of
Transp., 109 F.3d 749, 751 (Fed. Cir. 1997). Furthermore, as
discussed above and herein below, the Army has established
several other valid reasons for declining to grant Plaintiff's
request to rescind the settlement agreement and his agreement to
retire.

        In any event, even assuming (but not finding) the
Army's refusal to rescind the settlement agreement was an adverse
action, Plaintiff still fails to rebut the Army's showing of non-
discriminatory intent by establishing that its proffered reasons

for its employment actions were "mere pretext for unlawful discrimination." Hawn v. Executive Jet Management, Inc., 615 F.3d 1151, 1155 (9th Cir. 2010). Morris essentially repeats arguments that he previously made and which were previously rejected by the Court in its Feb. 4 Order. See Wereb v. Maui County, 830 F. Supp. 1026, 1031 (D. Haw. 2011) ("Mere disagreement with a previous order is an insufficient basis for reconsideration.").

Plaintiff first argues that COL Margotta's statement that Plaintiff did not "take care of his employees" was not made in good faith because Morris produced letters of support from his co-workers and employees whom he supervised. (Pl.'s Mot. at 8.) Plaintiff further argues that COL Margotta chose to "disregard the letters [without] contacting anyone who wrote the letters" and "hinted that Plaintiff forced them to write letters which was untrue." (Pl.'s Reply at 8.)[13] However, as this Court found its Feb. 4 order, COL Margotta had several reasonable grounds for his statement. As pointed out by Defendant, COL Margotta concluded that refusing to provide additional support for his employees' performance appraisals did not constitute taking care of one's

---

[13] The Court notes that Plaintiff's allegation that COL Margotta "hinted that Plaintiff forced [his employees] to write letters" does not include any citation as to the source of such allegation, and the Court has not found such a source in the record. In any event, even assuming COL Margotta made this statement, it would not change this Court's holding that Plaintiff failed to produce sufficient evidence establishing that the Army's reasons for its employment actions were pretextual.

employees. Specifically, COL Margotta found "that [Morris's] refus[al] to go back and readjust the ratings. . . resulted in his employees being downgraded on their ratings because the write ups did not justify the ratings that [Morris] gave them." (Pl.'s CSF Ex. 12.) Additionally, COL Margotta was likely aware of statements made by other Army personnel indicating that Plaintiff's refusal to modify the performance appraisals was detrimental to his employees since such statements would presumably be in the record that COL Margotta reviewed prior to making his decision. For instance, Deputy Commander Bryson Jhung stated on December 3, 2007 that Plaintiff's "misconduct adversely affected their organization by [c]ompletely stopping the pay pool process and wasting the valuable man hours associated with [Plaintiff's] intentional, deliberate delay" and "affected the employees which represented the USAG-HI Pay Pool by delaying their ability to close out the board and return to their appointed places of duty." (Pl.'s CSF Ex. 14 at 3, ¶ 6.) Also, Deputy Commander Jhung and LTC Michael Wallace stated on December 13, 2007 that allowing Plaintiff to remain in his Supervisory Operations Officer position even though he refused to abide by his superiors' directives was not in the "best interest of this Organization" and its employees. (Def.'s CSF Ex. 2 at 2, ¶ 2.)

Although Plaintiff notes that Morris received several letters of support from his employees, the question is not

whether COL Margotta's statement was "<u>objectively</u> false," but rather whether he "honestly believed [his] reason for [his] actions, even if [his] reason is foolish or trivial or even baseless." <u>Villiarimo v. Aloha Island Air, Inc.</u>, 281 F.3d 1054, 1063 (9th Cir. 2002) (emphasis in original). Here, Plaintiff has made no showing that COL Margotta did not act in good faith when he stated that Morris did not "take care of his employees." While Plaintiff points out that COL Margotta gave Morris a Commander's Award for Civilian Service; this does not controvert the fact that, among other serious concerns mentioned above, Morris "demonstrated [an] inability to follow supervisory standards [which] negatively effected" his employees and "caus[ed] irreparable damage" to the trust placed in him by his commanding officers. (Def.'s CSF Ex. 2 at 2, ¶ 2.)

Next, Plaintiff renews his argument that the two supervisors who were responsible for originally transferring him to a non-supervisory position were no longer in his chain of command and, consequently, COL Margotta's statement that "there was nothing new[,] no factors to consider" was pretextual. (Pl.'s Mot. at 9.) However, as Defendant points out, the absence of Mr. Brown and Lieutenant Colonel Wallace did not provide any reason for the Army to change its position and rescind the settlement agreement. (Summary Judgment Order at 49.) As COL Margotta explained, "one of the things [Plaintiff] was asking for was

essentially to go back into his old position, which would have meant for me as the commander to basically say that he did nothing wrong. . . There was no new compelling evidence or anything that [Plaintiff] could bring to the table that would want me to go back on the agreement." (Feb. 4 Order at 36, n. 11). As such, Plaintiff continues to fail to establish that the Army's articulated reasons are pretextual "by showing that the employer's proffered explanation is unworthy of credence." <u>See</u> <u>Villiarimo</u>, 281 F.3d at 1062. Accordingly, Plaintiff does not meet his burden of showing that the Army's reasons for not rescinding the settlement agreement were pretextual.

In sum, Plaintiff does not set forth facts or law of a strongly convincing nature to induce this Court to reverse its prior finding that his decision to retire was voluntary or that he failed to produce sufficient evidence of pretext. <u>See</u> <u>Hele Ku</u> <u>KB</u>, 873 F. Supp. 2d at 1289. Therefore, the Court DENIES Plaintiff's Motion for Reconsideration with respect to his ADEA claims.

## CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Reconsideration and Relief from a Judgment or Order Dated February 4, 2014.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, April 7, 2014.

-32-



_Alan C. Kay_

_____

Alan C. Kay

Senior United States District Judge

<u>Morris v. McHugh</u>, Civ No. 13-00182 ACK-KSC: ORDER DENYING
PLAINTIFF'S MOTION FOR RECONSIDERATION

-33-